## BYERS v. SUN SAVINGS BANK.

No. 3122.  Opinion Filed February 28, 1914.

Rehearing Denied March 28, 1914.

(139 Pac. 948.)

1.  **CONVICTS—Capacity to Contract—Mortgage.** Under our statutes a person convicted of a felony is not divested of all rights whatever and rendered absolutely civiliter mortuus, but may contract with an attorney or other person to obtain a parole, a pardon, or to sue for a writ of habeas corpus, and this, in the absence of an express statute to the contrary, or some express provision for the management of his estate, necessarily carries with it the right to dispose of his property in order to employ counsel.

2.    **CIVIL RIGHTS**—Definition—''Natural Rights''—''Civil Rights.''
      By the term ''natural rights'' is meant those rights which are
      necessarily inherent, rights which are innate and which come from
      the very elementary laws of nature, such as life, liberty, the pursuit
      of happiness, and self-preservation.
         By the term ''civil rights,'' in its broader sense, is meant those
      rights which are the outgrowth of civilization, which arise from
      the needs of civil as distinguished from barbaric communities,
      and are given, defined, and circumscribed by such positive laws
      enacted by such communities as are necessary to the maintenance
      of organized government, and the term comprehends all rights
      which civilized communities undertake, by the enactment of posi-
      tive laws, to prescribe, abridge, protect, and enforce.

(Syllabus by Harrison, C.)

*Error from District Court, Kiowa County;*
*James R. Tolbert, Judge.*

Action by the Sun Savings Bank against Andrew N. Byers
on a promissory note.  Judgment for plaintiff, and defendant
brings error.  Affirmed.

*John T. Hays, J. S. Carpenter,* and *J. G. Hughes,* for plain-
tiff in error.

*A. J. Biddison* and *Harry Campbell,* for defendant in error.

Opinion by HARRISON, C.  This was an action upon a
promissory note for $1,000 and interest as provided in the note
and to foreclose a mortgage given on certain town lots in the
town of Gotebo, Okla., to secure the payment of same.  The
note and mortgage in question had been executed by the defend-
ant, Byers, while under sentence and confinement in the peni-
tentiary for a felony.  It was executed to one G. C. Sheffler, an
attorney, as a fee for obtaining a parole.  The contract was en-
tered into and executed and the parole obtained afterwards.
After Byers was paroled, he further ratified the contract by
promise in writing.  The only material defense made was that,
under our statutes, Byers had no authority to contract while
under confinement for a felony, and that he had no power to
ratify such contract after he was paroled, for the reason that the
sentence to confinement in the penitentiary was not removed by
the parole.  The cause was tried before Judge James R. Tolbert
in the district court of Kiowa county at the May term, 1911, and

judgment rendered for the face of the note and interest and foreclosure of the mortgage. From such judgment defendant appeals.

Two important fundamental propositions are presented: First, whether an incarcerated felon has power to contract with an attorney to secure a pardon or parole. Second, if such contract be invalid, can it be validated by ratification after the parole is obtained. Both propositions are affirmed by the plaintiff bank. Both are denied by defendant Byers. Counsel for Byers contend: First, that under our statutes all civil rights of a person convicted of a felony, including the power to contract for any purpose, are suspended during the term of imprisonment; that he is civilly dead. Second, that such rights are not restored by a parole. Counsel for the bank contend: First, that the power to contract with an attorney for a parole or pardon is an inherent natural right which is not taken away by statute. Second, that if taken away, it is restored by parole. A determination of the first proposition necessitates an inquiry into what is meant by the terms "civil rights" and "natural rights," and what distinction exists between the terms, and how far "natural rights" are controlled or abridged by "civil rights." As we understand the term "natural rights" from a study of text-books, decisions, and lexicons, as well as from the rules of reason, are those rights which are necessarily inherent, rights which are innate, and which come from the very elementary laws of nature, such as life, liberty, the pursuit of happiness, and self-preservation. While by the term "civil rights," in its broader sense, is meant those rights which are the outgrowth of civilization, which arise from the needs of civil, as distinguished from barbaric communities, and are given, defined, and circumscribed by such positive laws, enacted by such communities, as are necessary to the maintenance of organized government. The term should not be confounded with, nor distinguished from, the term "political rights," as seems to have been done by some authorities. It is a broader and more comprehensive term than the term "political rights." The word "civil" is derived from the Latin "civilis," a citizen, as distinguished from a savage or barbarian.

and the term "civil rights" comprehends all rights which civilized communities undertake, by the enactment of positive laws, to prescribe, abridge, protect, and enforce. "Political rights," therefore, such as the right of suffrage, the right to hold office, and the right to participate in the administration of governmental affairs, are included within and abridged, extended, protected, and enforced by the more comprehensive term "civil rights," which comprehends and circumscribes all rights which the code, written or unwritten, of a civilized community gives to its citizens, including the less comprehensive term "civil" as distinguished from "military" rights. See Webster's Unabridged Dictionary; Anderson's Law Dictionary; Black's Law Dictionary; Bouvier's Law Dictionary, title "Civil Rights"; 7 Cyc. title "Civil Rights"; 6 Am. & Eng. Enc. L. (2d Ed.) title, "Civil Rights."

The immediate inquiry therefore is: To what extent those primary rights which inhere from and are endowed by nature are limited or abridged by our statute. Section 732, Wilson's Rev. & Ann. St. 1903 (section 877, Rev. Laws 1910), reads as follows:

"All persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights."

Section 2680, Wilson's Rev. & Ann. St. 1903 (section 2813, Rev. Laws, 1910), reads:

"A sentence of imprisonment in the penitentiary for any term less than for life, suspends all the civil rights of the person so sentenced, and forfeits all public offices, and all private trusts, authority or power, during the term of such imprisonment."

The language of these statutes, in the absence of other recognized and established principles of law, would seem to divest a citizen of all rights whatsoever and render him absolutely *civiliter mortuus,* but the principles of law which this verbiage literally imports had its origin in the fogs and fictions of feudal jurisprudence and doubtless has been brought forward into modern statutes without fully realizing either the effect of its literal significance or the extent of its infringement upon the spirit of our system of government. At any rate, the full significance of

such statutes has never been enforced by our courts, for the principal reason that they are out of harmony with the spirit of our fundamental laws and with other provisions of statutes. The ancient doctrine of attainder is expressly forbidden by our federal Constitution and by the Constitution of each separate state, and the modern trend of American authorities has been to extend, rather than to limit, those natural rights, such as the right to own and dispose of one's own property, except in states where they are expressly abridged by statute, and other means, as by appointment of a trustee of the estate of convicts, expressly provided for, as in Missouri, Kansas, and Colorado. The following decisions clearly show the trend of American decisions and fully support the foregoing conclusions: *Avery v. Everett,* 110 N. Y. 317, 18 N. E. 148, 1 L. R. A. 264, 6 Am. St. Rep. 368; *Kenyon v. Saunders,* 18 R. I. 590, 30 Atl. 470, 26 L. R. A. 232; *Rankin v. Rankin,* 6 T. B. Mon. (Ky.) 531, 17 Am. Dec. 161; *Estate of Donnelly,* 125 Cal. 417, 58 Pac. 61, 73 Am. St. Rep. 62; *Gray v. Stewart,* 70 Kan. 429, 78 Pac. 852, 109 Am. St. Rep. 461; *Estate of Nerac,* 35 Cal. 392, 95 Am. Dec. 111; *Davis v. Lanning,* 85 Tex. 39, 19 S. W. 846, 18 L. R. A. 82, 34 Am. St. Rep. 784; *Guarantee Co. of N. Am. v. First Nat. Bank of Lynchburg,* 95 Va. 480, 28 S. E. 909; *Gray v. Gray,* 104 Mo. App. 520, 79 S. W. 505; *Frazer v. Fulcher,* 17 Ohio, 261; *Stephani v. Lent,* 30 Misc. Rep. 346, 63 N. Y. Supp. 471; 9 Cyc. 872, 873, and authorities cited in notes; 6 Am. & Eng. Enc. L. (2d Ed.) title "Civil Death"; and authorities cited in texts.

While none of the foregoing decisions discusses and passes upon the entire proposition necessary to be determined here, yet upon the whole, taken as one entire exhaustive treatise upon the various questions arising under statutes similar to ours, they fully sustain the conclusions herein reached. In the case of *Stephani v. Lent, supra,* the exact question presented here was passed upon by the Supreme Court of New York, and it was there held that a contract by one confined in the penitentiary for life is valid; the contract in question being an agreement to pay an attorney's fee of $1,000 for services in obtaining a pardon or commutation of sentence. In the body of the opinion the court said:

"The very instructive opinion delivered in the case of *Avery v. Everett* (cited *supra*) 110 N. Y. 317, 18 N. E. 148, 1 L. R. A. 264 [6 Am. St. Rep. 268], where the status of a life convict was involved, would appear to afford authority for the proposition that a person 'civilly dead' may still dispose of his property by will or by deed, and this during the period of the civil death. So, too, he may make a valid contract for the breach of which his estate would be answerable, although, on his side, the contract could not be enforced with the aid of the courts."

Also, in the case of *Martin v. Territory*, 14 Okla. 603, 78 Pac. 89, involving the question of the competency of the person who had been sentenced to life imprisonment to testify, and where counsel urged the provision of statute that a person sentenced to imprisonment in the territorial·prison for life is thereby deemed civilly dead, the court held that he was a competent witness, and said:

"The statute on which appellant relies has no application to the right of such a person to testify as a witness, but applies to other civil rights. Section 4209 of our statutes provides: 'No person shall be disqualified as a witness in any civil action or proceeding by reason of his interest in the event of the same, as a party or otherwise, or by reason of his conviction of a crime, but such interest or conviction may be shown for the purpose of affecting his credibility.' "

Section 2955, Rev. Laws 1910, provides:

"Besides the personal rights mentioned or recognized under the law, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations."

Our statutes further provide that a person convicted of felony may be sued for a divorce or prosecuted for a crime committed while under conviction, all of which goes to show he is not to be regarded as absolutely *civiliter mortuus*. Besides, the right of a convict, while under sentence to confinement in the penitentiary, to apply for writ of *habeas corpus,* for pardon, or parole, has been universally recognized by the courts of our state. All of which goes to show the tendency of our laws to not interfere with or abridge those natural rights, the exercise of

which do no detriment to society nor harm to the liberal spirit of our positive laws. . Besides, section 18 of our Constitution ('section 10, Williams' Ann. Const. Okla.) provides:

"The privilege of the writ of *habeas corpus* shall never be suspended by the authorities of this state."

This therefore would constitute express authority to apply for a writ of *habeas corpus* at any time, and, if a convict be authorized to sue for a writ of *habeas corpus* at any time he may deem himself unlawfully restrained of his liberty, it logically follows that he has the right to contract for the prosecution of his writ. The right to such a writ or the right to petition for a pardon or parole would be an absolute nullity unless it carried with it the right to contract for .the prosecution of same, and especially so in the absence of some express statute providing for the disposition of his property, or providing for a trustee to manage his estate and represent his interests. We think, therefore, it is the evident intention of our law and in harmony with the spirit and policy of our state government to allow a convict to contract with an attorney to procure his liberty, whether he is to be represented in obtaining a pardon, a parole, or a discharge under a writ of *habeas corpus*. The law is stated in 9 Cyc. p. 874, thus:

"By the great weight of authority, offenders, whether or not sentenced to state prison for life or for a term of years during which their civil rights are suspended, are still liable to be sued, and this liability necessarily carries with it the right to defend."

This has been held in California, Delaware, Kentucky, Nevada, New Jersey, New York, Pennsylvania, and Virginia.

Now, if a convict be authorized to contract for his defense, it is by reason of his having power to convey or incumber his own private property in order to carry out his contract, and, if he has power to contract for one thing and to convey or incumber his property in such instance, we can see no reason, in the absence of an express statute to the contrary, or in the absence of some express provision for the management of his estate, for holding that he cannot exercise his personal inherent right of incumbering or conveying his own private property, nor for holding that such conveyance or incumbrance is invalid. When

a person is convicted of a felony, he is deprived of his political rights, such as the right of suffrage, the right to hold office and to participate in the affairs of government, and, besides this, he is deprived of his liberty to roam at large, and of his time and the benefits of his own labor, which are forfeited to the state, and he is subjected to such prison regulations as are necessary to enforce the penalties of the law. And, upon obtaining a parole, in the absence of express restrictions, he is restored to his liberty to go at large and to his natural right to the fruits of his own labor so long as he lives up to the conditions of the parole. This would logically carry with it the right to make contracts and to acquire and dispose of his own private property.

Hence we believe the judgment of the trial court should be affirmed.

By the Court: It is so ordered.