## HEDRICK et al. v. MARSHALL et al.
### (No. 9765.)

(Court of Civil Appeals of Texas. Dallas.
Feb. 20, 1926.)

**Marriage ⊕⇒4—One in jail under indictment for rape may marry injured girl, in absence of statutory impediments (Rev. St. 1925, arts. 2574, 4603–4605, 4607; Bill of Rights, § 21).**

One in jail under indictment for rape has right to marry injured girl, in absence of statute to contrary, where there are no impediments under Rev. St. 1925, arts. 4603–4605, 4607; civil death not attending even conviction of felony, in view of article 2574 and Bill of Rights, § 21.

Appeal from District Court, Dallas County; E. E. Hurt, Special Judge.

Suit by Albert Hedrick and another against Schuyler Marshall and another. Judgment for defendants, and plaintiffs appeal. Reversed and rendered.

G. H. Crane, of Dallas, for appellants.

VAUGHAN, J. This is an appeal from an order refusing appellants Albert Hedrick and Louise Wilson a writ of injunction enjoining and restraining appellees Schuyler Marshall, Jr., and Shelby Cox, respectively, sheriff and district attorney of Dallas county, Texas, from in any way preventing the marriage of appellants, and denying them a mandatory injunction to compel appellees to allow them to marry in the county jail of Dallas county, Tex. Said petition in substance alleges that said Albert Hedrick is confined in the county jail of Dallas county, Tex., on a charge of rape, of which he is innocent; that he is a resident citizen of Dallas county, Tex.; that said Louise Wilson is a young woman under the age of 21 years; and that she brings and maintains this suit by and through her next friend and attorney, G. H. Crane; that the appellee Shelby Cox is the duly elected and acting district attorney of Dallas county, Tex.; that Schuyler Marshall, Jr., is the duly elected and acting sheriff of Dallas county, Tex.; that both appellants are of marriageable age; that they love each other, and there is no legal reason or cause why they should not be married; that they are engaged to be married, have been for some time; and that their marriage contract is legal and binding on them; that said Louise Wilson has the consent of her parents to enter into said marriage state; and that appellants have a marriage license duly issued by the county clerk of Dallas county, and have attempted to legally marry, but each time they have attempted to enter into that state appellees have interfered, would not allow them to do so, and would threaten to lock any one up who assisted them in consummating their said desire; and that they still so interfere and refuse to allow appellants to get married,

although there is no legal impediment to appellants assuming said state; that they have no adequate, legal remedy at law, and will suffer great and irreparable damage and injury unless the court grants to them its writ of injunction commanding and ordering said appellees and each of them to desist from further interfering with appellants in their efforts to marry; and that they have a mandatory injunction commanding said appellees to allow them to marry, and carry out their marriage contract, and enjoining appellees from removing appellant Hedrick from the Dallas county jail pending said suit.

Said petition was presented to the judge of the trial court and his fiat indorsed thereon, directing the clerk of the trial court to issue notice to the appellees to appear on the 30th day of January, 1926, at 9:00 a. m., and then and there show cause why appellants should not have the relief prayed for. Said petition was heard at the appointed time, and the relief sought by appellants denied; hence this appeal.

Upon the hearing of said petition, evidence was introduced as follows:

Mrs. Ardela Hedrick testified:

"My name is Ardela Hedrick. I am the mother of Louise Wilson. She was 14 years old last September. Her father is dead. She lives with me in Dallas county. I have known Albert Hedrick about 4 years. I gave my consent to Albert Hedrick and my daughter getting married. Her stepfather also gave his consent. We are still willing for them to be married. I am a sister-in-law of the Hedrick that is in jail. This marriage has been arranged since he was put in the county jail. My daughter is now 14 years old. I know that a marriage license has been issued in Dallas county for my daughter and Albert Hedrick to get married. I know that they have been trying to get married for the last 3 or 4 years. I do not know of any one trying to force my daughter to marry Albert Hedrick. My reason for giving my consent to their marriage now is that I figure it is better for her. She says she is pregnant. That is not my only reason, but it is one reason. My husband is a brother of Albert Hedrick. He will not have anything to do with this case at all. I think it is best for them to get married. She says she loves him, and he says he loves her. He is 37 years old. I give my consent to their marriage if she wants to marry him. No one has had any influence over me or caused me to change my mind. I have not seen Albert Hedrick since he was placed in jail. My husband has not influenced me in this case in the least. My daughter left home without my consent. I was not even at home. I do not know anything about what charge is against Albert Hedrick. After mature deliberation, I have given my consent to my daughter and Albert Hedrick getting married. I do not know who is representing Albert Hedrick in the rape case."

Appellant Louise Wilson testified:

"I was fourteen years old last September. Albert Hedrick and I are engaged to be mar-

ried. We have been trying to get married for 2 or 3 years. There is a marriage license issued for us to get married, but the sheriff and district attorney will not let us. I want to marry Albert Hedrick. I have had my mind made up a right smart while. I told Albert Hedrick I would marry him. I have testified that I did not want to marry Albert Hedrick, but I changed my mind. I had an opportunity to marry him when we were away from Dallas. No one has caused me to consent to this. No one has talked to me about it; neither my step- father or his brother, Albert. I do not have to talk to him to know he wants to marry me. I want to marry Albert Hedrick. It is of my own free will."

We find the facts are as testified to by said witnesses, and, as necessarily reflected by said testimony, the following additional facts: That Albert Hedrick had sexual intercourse with Louise Wilson, with her consent, while she was under the age of 16 years, to wit, less than 14 years; that on account of said act he is now under indictment, charged with rape; that said Louise Wilson is now quick with child from said relationship with the said Albert Hedrick; that appellants were engaged to be married before and at the time of said relationship; that Albert Hedrick is now confined in the Dallas county jail in charge of appellee Marshall, as sheriff of said county, on account of said charge, he having failed to make bond as fixed by the judge of the court in which said prosecution is pending.

Did the appellants at the time of the hearing of their petition for the relief sought have the right under the law to marry each other, and have they now that right? What persons are entitled to marry under the laws of Texas is the first question for us to determine. The law making power of the state has answered this by two short provisions:

Article 4603, R. C. S. 1925, declares that males under 16 and females under 14 years of age shall not marry, and article 4607, Id. provides that—

"It shall not be lawful for any person of Caucasian blood or their descendants to intermarry with Africans or the descendants of Africans. If any person shall violate any provision of this article, such marriage shall be null and void."

Article 4604, Id., deals with the obtaining of marriage license as follows:

"Persons who desire to marry shall procure from the county clerk a license directed to all persons authorized by law to celebrate the rights of matrimony, which shall be sufficient authority to celebrate such marriage."

Article 4605, Id., makes it necessary for the clerk called upon to issue a marriage license to have the consent of the parent or guardian of the parties applying therefor, given in person or in writing signed and acknowledged by said parent or guardian be-fore an officer authorized to take acknowledgments, unless the parties so applying are, in case of the male, 21 years of age and, in case of the female, 18 years of age.

Under the law it is clear that Albert Hedrick, being over 21 years of age, and a person of Caucasian blood, has the right to enter into the marriage state, and had that right when he sought to marry appellant Louise Wilson. It is true that at that time he was under indictment charged with having committed the offense of rape on the said Louise Wilson, and was confined in the county jail of Dallas county under the care, keeping, and control of appellee Marshall, as the sheriff of said county, and we assume that appellees resisted the relief sought by appellants on account of said condition, acts, and conduct of appellant Hedrick.

What change or alteration was made, if any, in the rights of the appellant Hedrick to marry by reason of said environments? The answer to this depends upon the effect of the indictment for the offense charged and his confinement in jail on account thereof. The purpose of the law in holding one in confinement to answer to a criminal charge is not to deprive the accused of any of his civil rights, except in so far as the detention interferes with his right to be at liberty. An indictment creates no presumption of the guilt of the accused. It is only the means of holding one to answer to a criminal charge of the grade of felony and, until convicted, the accused stands before the court to try him protected by the presumption that he is innocent, and it is only after the conviction of the accused that his civil rights as a citizen become in any respect abridged and withheld from him. Bowles v. Habermann, 95 N. Y. 246; Byers v. Sun Savings Bank, 139 P. 948, 41 Okl. 728, 52 L. R. A. (N. S.) 320, Ann. Cas. 1916D, 222. Even on conviction for the atrocious crime of treason, the early doctrine of the common law in regard to the attainder, forfeiture, and corruption of blood of convicts has no place in our criminal jurisprudence, and has not had since the adoption of the Constitution of the United States, which, in reference thereto, provides that Congress shall have the power to declare the punishment of treason, but no attainder of treason shall work corruption of blood or forfeiture, except during the life of the person attainted. To deny appellant Hedrick the right to enter into the marriage relationship because he is by indictment charged with crime would be but to hold him civilly dead because of such indictment, although not convicted of the offense charged against him.

Recalling the operation of the common law on one convicted of crime, we find that this extreme visitation of punishment was only inflicted after the accused had been convicted and sentenced. A concise and abridged statement of the common law in this respect is

found in section 2, p. 912, 13 C. J., which is as follows:

"By the ancient common law, when sentence was pronounced for treason or other felony, the offender was by operation of law placed in a state of attainder. And there were three principal incidents consequent on such attainder, to wit, forfeiture, corruption of blood, and an extinction of civil rights, more or less complete, which was denominated 'civil death.' By section 6, Id., p. 914, we find that 'in accordance with the modern policy of a more humane administration of the law, the early doctrine of the common law in regard to the attainder, forfeiture, and corruption of blood of convicts has been either entirely swept away or modified by constitutional and statutory provisions. The rights and disabilities of convicts are now generally the subject of statutory provisions.'"

Texas is one of the jurisdictions which, both by constitutional provision and legislative enactment, has abrogated civil death as an incident attending conviction for a felony. Section 21, Bill of Rights, Constitution 1876, and article 2574, Revised Civil Statutes 1925, provides:

"No conviction shall work corruption of blood, or forfeiture of estate."

In the case of Davis v. Laning, 19 S. W. 846, 85 Tex. 39, 18 L. R. A. 82, 34 Am. St. Rep. 784, the court having before it the questions, "What is the status of the title of the property of one under life sentence?" and, "Does the title remain with the convict, or does it descend to his heirs?" used the following language:

"If he can be sued and his property seized by his creditors after conviction, as has been held; if he can dispose of it by will, to vest as he shall direct after his death, then clearly he is neither dead in fact nor in law, and a fortiori there can be no descent of his estate to 'his heirs at law,' under such circumstances."

Notwithstanding the above provision of the Constitution and the act of the Legislature providing that no conviction shall work corruption of blood or forfeiture of estate, it must be conceded that the Legislature has power to make the indictment for a crime while pending an impediment to marriage, but such an enactment has not been made, and we must deal with the law as we find it. It must ever be borne in mind that it is not in the interest of any particular person or set of people, but in the interest of the public generally, that laws prescribing the course of human conduct are enacted by the supreme power of the state commanding the observance of that which is right and prohibiting the doing of that which is wrong, and likewise in the application and enforcement of the law by the courts same is not to be varied in one way or another because of the effect same may have upon the rights of any particular person as contradistinguished from the effect of the administration of the law generally.

Therefore we are not concerned in reference to the results that may flow from whether or not appellants enter into the marriage state, nor as to the effect of the law as announced bearing upon the great fundamental principle involved, in so far as the same may operate upon appellant Hedrick in meeting the criminal charge against him or the effect that same may have upon the condition of appellant Louise Wilson on account of the unfortunate illegal relationship with appellant Hedrick. However, society cannot escape the ultimate result of that condition. From the evidence we are to understand that a new life will be one of the results. What will attend that event if the participants responsible therefor are permitted to marry? The child will be legitimate, escaping the stigma of being branded a bastard. The mother will escape the stigma of being looked upon as the author of the existence of a bastard. The child will have parents to shield, protect, and care for it, and the father will be under the obligation, moral and civil, to provide for the support and maintenance of the mother and babe. On the other hand, the reverse will be the result if appellants are not permitted to enter into the marriage state. It is true by so doing appellant Hedrick will probably escape prosecution and conviction for the crime charged against him. What would be for the best interest of society or the public good? His conviction and incarceration as a felon, or to permit him, as far as is in his power, to rectify the wrong he has perpetrated by assuming the marriage state with her who will be made to suffer most, to say nothing of the suffering from shame that will be heaped upon the offspring to follow it through life like the leopard's spots, never to be removed? There is no suggestion that either of the appellants seek to enter into the marriage relationship for other motives than should actuate such a desire, further than that the effect of their marriage will in all probability prevent the state from securing the conviction of appellant Hedrick on the charge pending against him, in that his wife, his coappellant, the injured party, could not be compelled to testify against him.

In dealing with a kindred offense, that of seduction, the law not only permits, but rather encourages, the marriage of the wronged female and the defendant charged with that offense. This must be upon the proposition that the blended rights of society with the right of the injured female to be protected from the effect of the offense, as well as to secure the offspring legitimacy, is far greater for the public good than the conviction and punishment of the defendant. This principle is not only recognized but upheld by the Supreme Court in the case of Hanes v. Hanes, 234 S. W. 1078. The facts material upon which the Supreme Court based its holding

are these: On June 19, 1914, Bryan Hanes was held in the county jail of Dallas county, having been convicted and given a 5-year term in the penitentiary upon the charge of having seduced one Mable Smith, the plaintiff in that case, who was under 21 years of age, and was then pregnant, and in a rescue home in the city of Dallas. In consideration that Bryan Hanes would marry the said Mable Smith, he having made the offer to marry her after his conviction, the district judge who tried the case set aside the judgment of conviction, and, on the same day, Bryan Hanes was released from the county jail, and he and the said Mable Smith were duly married. The father of Mable Smith objected, and refused to give his consent to the marriage, unless and until C. W. Hanes, the father of Bryan Hanes, conveyed to the said Mable Smith a certain tract of land. The conveyance of the tract of land was made as insisted upon by Smith. It was contended that, as the consideration for the deed was that the case was to be dismissed and Bryan Hanes turned out of jail after he married Mable, the deed was tainted with illegality and void, in that the consideration was in part an agreement to suppress the prosecution of Bryan Hanes. The court, in passing upon this feature of the case, held:

"The case had passed beyond the control of plaintiff or her father. Only the judge who tried the case was in position to set aside the conviction; and upon granting that relief the cause would stand upon the docket as it did before plea to the indictment, and marriage of the parties would require its dismissal. There is no suggestion in the record that the action of the judge in setting aside the judgment of conviction was from other than entirely proper motives and considerations. It was in his discretion to set aside the conviction; and, assuming that his sole reason for doing so was the marriage of the parties, we think his action in this regard entirely proper, if not, indeed, highly commendable. There is no suggestion, either in the pleadings or evidence, that there was any agreement or attempt to influence his action further than as such action was influenced or controlled by the consummation of the marriage."

What about the environments of appellant Louise Wilson in reference to her right to marry? It is true, she is the injured party, in that it is by virtue of the transaction with her on the part of appellant Hedrick that he was indicted for the offense charged. She was, we are to assume from the evidence, between the age of 13 and 14 years. She became 14 years of age in September, 1925. After reaching that age, she obtained the consent of her then only surviving parent for her marriage with appellant Hedrick in the manner and form as required by law. Having reached the age of 14 years, and securing this consent, she became under the law entitled to the right to enter into the marriage state as if she were 18 years of age. Therefore no impediments exist in any respect against her assuming said relationship. From her testimony she loves Hedrick and wishes to marry him. There is, according to the testimony of her mother, an overpowering influence operating upon her, to wit, the realization that she is approaching motherhood, and that Hedrick is the father of her child. Their marriage, so far as the appellants are concerned, is the only thing that will ameliorate her condition as well as that of her offspring.

It is apparent that the result to be accomplished in the instant case by the marriage of appellants is parallel with the result accomplished in a seduction case. The law, on account of the criminal prosecution of appellant Hedrick for the wrong committed by him against Louise Wilson, does not present a barrier to the marriage of these parties. Therefore that right remains unimpaired just as it would under the conditions in which the parties now find themselves, with the exception of the offense committed for which the appellant Hedrick stands indicted. The right of the opposite sexes to mate for the purpose of becoming husband and wife sprang into existence with the creation of Eve to become the life companion and helpmate of Adam, and is, always has been, and always will be, an inherent, natural right of the highest importance given by God, inseparable from His work of creation, and, under His plan, indispensable for the propagation of the human family.

Sir Matthew Hale, one of the greatest jurists since the days of Moses, in writing upon this great principle, declared:

"Every man owes more of his being to Almighty God than to his natural parents, whose very propagative faculty was at first given to human nature by the only virtue, efficacy and energy of the divine commission and institution." Origin of Mankind, p. 354.

This divine right of mankind, whether exercised or not by some of the children of men, must forever remain inviolable. While the laws of man, enacted by duly constituted authority in the interest of public good, may prescribe what shall constitute an impediment to marriage, fix the marriageable age, and designate who shall perform a legal marriage ceremony, yet no act of organized society in any form could destroy this inherent law for the perpetuation of the human species.

We think it but due to the capable, efficient, and able district attorney and sheriff to state that, in the course pursued by them in their effort to secure the conviction of appellant Hedrick, the manifestation of their zeal in the discharge of their respective duties is not censured or criticized, but to the contrary, their alertness and eagerness to perform their respective official duties are commendable, and what is said in this opin-

ion is not intended in any respect as a criticism of the course pursued by them.

Appreciating the great importance of the question presented, we have been slow to reach a conclusion, but have carefully considered and weighed, as far as our limited time would permit, each consideration, motive, and interest that should enter into a solution of the question without having before us our journey's end; being content that the conclusion should be discovered to us as we progressed with the work of investigation. Having reached the conclusion that the trial court erred in refusing the relief sought by appellants, this judgment is reversed, and judgment now rendered in favor of appellants, restraining appellees from interfering with them in entering into the marriage state, and, for that purpose, a writ of mandatory injunction is awarded commanding appellee Schuyler Marshall, Jr., sheriff of Dallas county, Tex., to permit appellants to be married in the county jail of Dallas county, Tex., if said appellant Hedrick is still confined therein.

Reversed and rendered.