**Mary Louise DAVIS, Plaintiff in Error,**

v.

**Hunter N. PULLIUM, Defendant in Error.**

**No. 43008.**

Supreme Court of Oklahoma.

April 13, 1971.

Rehearing Denied May 25, 1971.

Duvall, Head, McKinney & Travis, Oklahoma City, for plaintiff in error.

Greer & Greer, H. W. Conyers, Jr., Tulsa, for defendant in error.

HODGES, Justice.

Is "civil death" a legal defense to a personal injury action?

Title 21 O.S., 1961, Section 66 provides:

*"Civil death.*

"A person sentenced to imprisonment in the state prison for life, is thereby deemed civilly dead."

Plaintiff, a service station employee, alleges that while he was checking the oil in the power steering in the defendant's automobile, the defendant carelessly and negligently started the engine of the car and plaintiff's hand was sucked or pulled into the area between the fan belt and the pulley, resulting in serious injuries to his right hand.

Defendant denied generally plaintiff's allegation and among other defenses, con-

tended that plaintiff as a convicted murderer under a life sentence had no right to bring this action, citing the above statute. After serving a period of time in a penal institution, plaintiff was paroled, but not pardoned. At the time of his injury plaintiff had been paroled for seven years.

Upon trial, the jury returned a verdict in favor of the plaintiff in the amount of $15,000.00 and defendant has appealed.

█ Plaintiff's alleged demise was best answered by his personal appearance at the trial. Even though the State had pronounced him "civilly dead", he was allowed his mortal existence. Perhaps, we should do the same. Stripped of his civil rights, he nevertheless remains a person and a citizen. Even naked citizenship alone is meaningful and priceless. While a convicted felon may be disenfrancised, denied the right to hold office or otherwise not allow to participate in matters of government, or to enjoy the full fruits of citizenship, he nevertheless cannot be regarded as human waste. Constitutionally, he still enjoys matters of self-preservation. Actions affecting his existence, safety and personal liberties are natural rights which are fully and perpetually protected. "This view is in accord with modern day decisions and penal reforms, which have moved away from the punitive concepts of the early common law." See 38 Okl.Bar Journal p. 643, Dr. Maurice H. Merrill, Oklahoma & the Uniform State Law Program (1966).

A literal interpretation of the statute, as advanced by the defendant, could produce preposterous arguments and conclusions. One might even assert the same defense when charged with the crime of murder of a person civilly dead, or one under a sentence of "civil death" may refuse to pay income taxes on the theory that only the living are required to pay. In Byers v. Sun Savings Bank, 41 Okl. 728, 139 P. 948 (1914), we said in refusing a literal interpretation of a similar statute:

"The language of these statutes, in the absence of other recognized and established principles of law, would seem to divest a citizen of all rights whatsoever and render him absolutely civiliter mortuus, but the principles of law which this verbiage literally imports had its origin in the fogs and fictions of feudal jurisprudence and doubtlessly had been brought forward into modern statutes without fully realizing either the effect of its literal significance or the extent of its infringement upon the spirit of our system of government. At any rate, the full significance of such statutes have never been enforced by our courts for the principal reason that they are not of harmony with the spirit of our fundamental laws and with other provisions of statutes."

Article 2 of the Oklahoma Constitution, Section 6 provides:

"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administrated without sale, denial, delay or prejudice."

This constitutional mandate has made our course sure and certain.

We answer the posed question with an emphatic "no". Civil death is *not* a defense to a personal injury action. Rumors of plaintiff's death are greatly exaggerated.

█ Defendant next complains of the trial court's refusal to give defendant's requested instruction on custom. One of plaintiff's witnesses was a service station operating who testified that the procedure used by plaintiff in servicing defendant's automobile was in keeping with the custom performed by other service station attendants in the area exercising due care. Defendant states that custom is not conclusive on the issue of due care and cannot be considered by the jury on the issue of primary negligence, but rather in this instance is relegated to the role of a defense to contributory negligence. Sanders v. C. P. Carter Construction Co., 206 Okl. 484, 244 P.2d 822 (1952). Defendant argues that

without an instruction on this fundamental law we have no way of knowing whether or not the jury properly restricted their consideration of such evidence to the issue on contributory negligence or erroneously considered the evidence as relevant to the issue of primary negligence.

Custom was not introduced to show primary negligence. Its purpose was to answer defendant's allegations of contributory negligence and lack of due care. One of defendant's principal defenses was that plaintiff himself was guilty of negligence which caused or contributed to the accident. Defendant vigorously argued to the jury plaintiff's failure to do that which an ordinarily prudent person would have done under similar circumstances.

While we may concede error by the trial court in refusing to give the requested instruction, we fail to see how the defendant was prejudiced. After considering all of the evidence, it is obvious, even to a jury, that plaintiff's evidence concerning custom of the trade was presented in an effort to refute defendant's allegation and charge of contributory negligence. Otherwise the evidence has no meaning or purpose. Certainly the jury did not consider such evidence on plaintiff's allegation of primary negligence by the defendant, who was not engaged in that business or trade. Also, it does not appear the jury considered custom as conclusive on the issue of due care by plaintiff. Other evidence was available to establish plaintiff's showing of due care, including exhibits and a visual view by the jury of the car's engine and mechanism under the hood. Viewed in this posture we fail to see how the jury could have mistaken its application.

In defendant's third proposition she complains of prejudicial remarks by plaintiff's counsel during closing arguments to the jury. In plaintiff's opening argument to the jury counsel referred to his own hand which had been injured in the past. He informed the jury he was receiving $121.00 a month from the Veterans Admin-istration even though his damaged hand was not as severe as plaintiff's injured hand nor was needed as much in his profession as in plaintiff's occupation. Defendant objected to plaintiff's voluntary remarks, but the trial court overruled the objection and permitted counsel's argument of comparison.

The trial court was in error in allowing plaintiff's counsel to present this type of argument. The remarks were highly improper and in a proper case is grounds for reversible error. Plaintiff's argument should be confined to the issues and evidence presented during the trial, and matters completely outside the issues and evidence are not permitted. Atchison, Topeka & Santa Fe Railway Co. v. Coulson, Okl., 371 P.2d 914. Counsel's injured hand was not a issue and the monetary amount he was receiving from the Veterans Administration was not in evidence, nor would it have been admissible if offered.

The question now presented is the prejudicial nature of the error. We must resolve whether the improper argument was sufficient to require a new trial on the amount of damages, or if it justifies a remittitur by this court, or whether under the harmless error doctrine the jury's verdict and judgment should be affirmed. The test of prejudice is whether or not the error resulted in an excessive verdict. Missouri-Kansas-Texas Railroad Co. v. Jones, Okl., 354 P.2d 415 (1960). By that standard we will examine the record for plaintiff's injuries.

Defendant introduced no medical evidence of plaintiff's injuries, nor did she seek to have him examined independently or by her own physician prior to trial. The only medical evidence available was the testimony of the plaintiff and his doctor. In the closing argument, defendant's counsel praised plaintiff's doctor as "a good, competent, qualified orthopedist." In light of his concession the doctor's testimony should be examined closely in determining the extent and justification of the amount of the jury's verdict.

Summarily, plaintiff's doctor's testimony is as follows: Plaintiff had received cuts across the fingers involving the middle and ring fingers. The tendons in both fingers had been injured, but the tendon in the middle finger was more severly damaged and unfunctional in the distal joint. That the hand is a very sensitive organ and a severe injury is always quite painful requiring medication. The doctor testified that he performed necessary surgery to repair the severed tendon for the middle finger; that he can now touch this finger to the palm, but the "results of the operation was not ideal"; that "he has approximately 15 degrees of motion whereas normally you have almost 90 degrees"; that after surgery his hand was immobilized for four weeks; that the ring finger cannot touch the palm, lacking one-half to three-quarter of an inch.

The doctor stated that plaintiff has permanent disability to the hand which would affect and limit his work at a service station or to otherwise perform ordinary manual labor. Upon his last examination of the plaintiff before trial, the doctor said he found:

"A. The range of motion of the fingers was impaired; anatomically, there was restriction of motion of both the proximal or the middle joint and the tip joint of the middle finger, and restriction of motion of the tip joint of the ring finger. There was definite weakness in his grip. There was also some tingling over this side of the finger distal to the laceration; apparently he had cut some fibers to the nerve of this finger. And the generalized loss of grip, plus he had complaints of pain involving his arm, with difficulty using his arm; a great deal of stiffness in his whole hand when he first awakened in the morning.

"Q. Doctor, as a result of this injury, now, do you feel that he has any disability to the arm, or is it simply to the hand?

"A. I feel like Mr. Pullium has a variant of what we call the shoulder-hand syndrome. Any time there is an injury to the hand, there is many times, through the interconnected nerve, there is pain over the entire arm. It is of varying degrees, sometimes to the point of total disability and marked sensitivity of the skin where you can't even touch anything. His did not approach that, but he has the arm pain and the stiffness in his hand with difficulty in using his entire hand, rather than just the two involved fingers.

"Q. Did he complain of pain on your last examination, Doctor?

"A. Yes, Mr. Pullium stated that he was still taking Darvon Compound daily."

When we considered all the pain and suffering involved in this type of injury; his hospitalization for two and half days; the immobility of his hand for four weeks; the permanent disability to the hand and arm and its effect and limitation upon his type of work; his continuing pain after 18 months; his life expectancy of 15 years; together with his past medical bills in the amount of $424.30 and his loss of wages for seven weeks, then we as a reviewing court cannot say the jury was prejudiced by the error or that the error prompted the jury to render an excessive verdict.

The improper remarks of counsel suggested to the jury a verdict in excess of $21,000 based on the monthly amount he was receiving from the Veterans Administration. This would indicate that if the jury's verdict was more than $21,000 then there was a possibility of miscarriage of justice from the improper remarks in the closing argument. A verdict of $15,000 as in the present case, suggest the error was not prejudicial and did not affect the amount of award. While it is always difficult to assess a precise monetary loss on personal injury, we find under the circumstances the jury's verdict to be reasonable and within proper limits.

As was stated in the case of White v. Burton, 180 Okl. 499, 71 P.2d 694 (1937), "there is one thing above all others which convinces us that no prejudice resulted to the defendant from these things, and that is the amount of the verdict." While we seriously pause and reflect anytime before affirming a judgment when obvious error is committed, we do so when it is equally as obvious that the error resulted in no detriment or harm to the defendant, and that the verdict would have been the same without the error. We find the amount of verdict is not excessive and that no prejudice resulted from the error.

Judgment affirmed.

JACKSON, IRWIN, LAVENDER and McINERNEY, JJ., concur.

BERRY, C. J., and WILLIAMS and BLACKBIRD, JJ., concur in part and dissent in part.

DAVISON, V. C. J., concurs in results.