

# The Attorney General of Texas

December 31, 1985

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Bill Stubblefield
Williamson County Attorney
Third Floor, Courthouse
Georgetown, Texas 78626

Opinion No. JM-415

Re: Legality of a sheriff hiring, for a paid county position as an unguarded maintenance supervisor outside the jail, a prisoner sentenced to the Texas Department of Corrections but not transferred there

Dear Mr. Stubblefield:

Your letter-brief requesting an opinion from this office advises (in somewhat different sequence):

On August 12, 1982, a prisoner who had been placed on probation for driving while intoxicated, subsequent offense, had that probation revoked. He was sentenced to five years in the Texas Department of Corrections. The Sheriff retained the prisoner in the Williamson County Jail, where he became a trusty. . . .

In the present case, the delay in transporting amounted to twenty months. However, this may have been motivated by an understanding on the sheriff's part that the prisoner's actual time behind bars would be very brief. . . .

The prisoner in this case is conceded by all parties to be an unusually skilled mechanic. In September of 1983, the sheriff asked the commissioners court to create a new position of maintenance supervisor, citing the financial benefits to the county by avoiding commercial shop charges to repair and maintain county vehicles. The court concurred largely on the basis of their appreciation of the talents of the sheriff's proposed employee -- the prisoner in question, who was expected to be released prior to the effective date of the position in January of 1984. When January came, the prisoner had not yet been

p. 1895

released, but it was essential to fill the new position. The sheriff had three choices: he could leave the job open (and pay shop charges), he could hire a less-qualified applicant, or he could hire the prisoner (who he expected to be paroled very shortly). . . . He had been advised by the district attorney who had convicted the prisoner that it would not be unlawful to hire him. . . . In September of 1983, a new position of Maintenance Supervisor was created in the sheriff's department. In January of 1984, the sheriff hired the prisoner for that position.

It should be emphasized that the prisoner in the present case was not engaged in manual labor as an incident of his confinement; he was performing skilled labor because he had been told he would be paid for it. . . .

There is no dispute that the prisoner in question was not held behind locked doors, or under armed guard, at all times. He was permitted a considerable amount of freedom of movement. In part, this was due to the nature of his duties as a maintenance supervisor. The prisoner was given additional privileges, including nights at home, on occasion; however, he was on call twenty-four hours per day, seven days per week. . . .

You characterize the question to be answered as: "Whether a TDC prisoner temporarily housed in the county jail can be hired by the sheriff as a compensated employee." As your brief recognizes, the question reflects assumptions about the legal consequences of the stated facts -- assumptions that require attention.

In Gardner v. State, 542 S.W.2d 127 (Tex. Crim. App. 1976), a prisoner whose five-year probation was revoked and who was sentenced to the Texas Department of Corrections, claimed that he should not be sent to the Texas Department of Corrections -- but, rather, that he was entitled to be discharged -- because he had been in jail and in the continuous custody of the sheriff of Smith County since the revocation. He argued that when his time credits for the sentence were computed, including consideration for "good time" credit as a "state approved trusty," he had sufficient time credits for his immediate discharge.

The Texas Court of Criminal Appeals held that a sheriff has authority to award commutation time credits to only those persons convicted and committed to serve sentences in his county jail, and

that only the director of the Texas Department of Corrections could make a final determination of what "good time" credits a prisoner held in a county jail prior to his transfer to the Texas Department of Corrections might be awarded, and, then, only <u>after</u> the prisoner is committed to the Texas Department of Corrections institution. The court said:

> Were we to accede to appellant's argument in this case and permit the Smith County Sheriff to determine appellant's status as a 'state approved trusty' and allow appellant to discharge his felony sentence while in county jail, we would have effectively negated the Texas Department of Corrections jurisdiction to incarcerate convicted felons in this state. This we shall not do.

<u>See</u> 542 S.W.2d 127, at 131; <u>see also</u> V.T.C.S. art. 6181-1, §3(c).

After reciting provisions of the judgment that ordered the prisoner to be delivered by the sheriff "immediately to the director of corrections of the Texas Department of Corrections," <u>id.</u> (emphasis omitted), the court further stated:

> In view of this felony judgment and sentence, appellant must be committed to the Texas Department of Corrections to serve the remainder of his sentence, not to the Smith County Jail. . . . Upon issuance of the mandate of affirmance of this conviction by this Court, the provisions of the trial court's sentence <u>shall be carried out immediately</u>. See <u>State ex rel Vance v. Hatten,</u> 508 S.W.2d 625 (Tex. Cr. App. 1974). (Emphasis added).

The court in <u>Gardner v. State</u>, <u>supra</u>, noted that a prisoner sentenced to fewer than ten years in prison and not released on bail, <u>who is awaiting the outcome of an appeal</u>, can choose to await the disposition of the appeal in either the county jail or in the Texas Department of Corrections. <u>See</u> C.C.P. art. 42.09, §5; <u>Ex parte Rodriguez</u>, 597 S.W.2d 771 (Tex. Crim. App. 1980). But the Williamson County prisoner was not awaiting the outcome of an appeal, and he had been sentenced not to jail, and not to a work-release program, but to <u>prison</u>. It was therefore the duty of the sheriff to immediately take the steps necessary to commit the prisoner to the Texas Department of Corrections. <u>See</u> C.C.P. art. 42.09; V.T.C.S. 6166r (transportation of prisoners).

The sheriff had no authority whatever to permit the prisoner such "freedom of movement" or "nights at home" -- even though the prisoner

may have remained at such times in "constructive" custody. The Code of Criminal Procedure, article 42.09, section 1 provides in pertinent part:

> Except as provided in Sections 2 and 3 [detailing procedure regarding defendants released on bail and those sentenced to a term of more than ten years], a defendant shall be delivered to jail or to the Department of Corrections when his sentence to imprisonment is pronounced, or his sentence to death is announced, by the court. . . . (Emphasis added).

A sheriff is authorized by article 5118a, V.T.C.S., in return for good behavior, to reward certain prisoners with the relaxation of strict county jail rules and to extend to them social privileges consistent with proper discipline, but the privileges awarded cannot contravene legislative commands. See Ex parte Walker, supra. See also Gardner v. State, supra; Attorney General Opinion MW-497 (1982).

Article 2.18 of the Code of Criminal Procedure states that it is a violation on the part of a sheriff to permit a defendant, committed to jail by warrant from a court, to remain out of jail. As held in Ex parte Walker, 599 S.W.2d 332, at 334 (Tex. Crim. App. 1980), "[o]ur law does not authorize a court to sentence a defendant to serve his sentence at home." Nor does it authorize disobedience to judicial mandates. See State ex rel Vance v. Hatten, supra, at 508 S.W.2d 628; Ex parte Wyatt, 16 S.W. 301 (Tex. Ct. App. 1891); Attorney General Opinion H-603 (1975).

In Ex parte Wyatt, supra, the court said:

> The sheriff has no right, no matter what his motives, whether of humanity or not, to commute or alter . . . [a prisoner's] punishment, and any act of his doing so is a violation of his duty, and absolutely void.

Id. at 301. See also Williams v. State, 274 S.W.2d 547 (Tex. Crim. App. 1955); Dufek v. Harrison County, 289 S.W. 741 (Tex. Civ. App. - Texarkana 1926, no writ); Attorney General Opinion M-918 (1971). Cf. Ex parte Morgan, 262 S.W.2d 728 (Tex. Crim App. 1953).

With respect to the employment of prisoners -- aside from considerations of their place of employment or the supervision accorded them -- it should be noted that there is no federally protected right of a state prisoner not to work while imprisoned after conviction, even if the conviction is being appealed. Leaky v. Estelle, 371 F. Supp. 951 (N.D. Tex. 1974), aff'd, 503 F.2d 1401 (1975). And there is

no constitutional right in prisoners to be paid for their labor; any compensation permitted is by grace of the state. Sigler v. Lowrie, 404 F.2d 659 (8th Cir. 1968), cert. denied, 395 U.S. 940 (1969).

The only provisions in our law that contemplate the payment of wages for the labor of persons imprisoned are those establishing "work-release" programs. See V.T.C.S. art. 5118b; art. 6166x-3, §5. It is expressly provided by section 4(b)(7) of article 5159d, V.T.C.S., that the Texas Minimum Wage Act of 1970 does not apply to "any person who performs any services while imprisoned in the state penetentiary or confined in a local jail."

Convicted felons -- even those sentenced to life imprisonment -- are not "civilly dead." Davis v. Laning, 19 S.W. 846 (Tex. 1892). Cf. Hendrick v. Marshall, 282 S.W. 289 (Tex. Civ. App. - Dallas 1926, no writ). But they are not free to enter a master/servant contract for the sale of their labor, time or services -- the disposition of which is lodged by law in the state. The relationship of master and servant exists only where the master has the right to control the servant -- a right which a convicted prisoner cannot, sui juris, confer upon an employer. See 33 Tex. Jur. 3d, Employer and Employee §2 at 19. Article 6166a, V.T.C.S., specifies that all prisoners shall be worked within the prison walls and upon farms owned or leased by the state. Cf. V.T.C.S. art. 6203c; Attorney General Opinion V-233 (1947). It further provides that "in no event shall the labor of a prisoner be sold to any contractor or lessee to work on farms, or elsewhere. . . ." Cf. V.T.C.S. art. 6166x (prison inmates); C.C.P. art. 43.10 (misdemeanants); Attorney General Opinions JM-73 (1983; MW-497 (1982).

Attorney General Opinion WW-36 (1957) concluded that it is illegal for a sheriff to work prisoners outside a county jail on his private ranch operations, even if the labor is voluntary and the prisoners are paid out of the sheriff's personal funds. In our opinion, it is also legally impermissible for a sheriff to place on the county payroll as a maintenance supervisor a prisoner sentenced to the Texas Department of Corrections. Cf. V.T.C.S. art. 3902. If the prisoner here supervised other prisoners (as may have been the case we understand), article 6184k-1, V.T.C.S., was also violated. That statute reads:

> Section 1. An inmate in the custody of the Texas Department of Corrections or in any jail in this state may not act in a supervisory or admini-strative capacity over other inmates.

> Sec. 2. An inmate in the custody of the Texas Department of Corrections or in any jail in this state may not administer disciplinary action over another inmate.

## S U M M A R Y

A prisoner sentenced to the Texas Department of Corrections and awaiting transfer to its facility may not be placed by the sheriff on the county payroll as a maintenance supervisor.

Very truly yours,

JIM   MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General