2003 OK 3

**Faramarz MEHDIPOUR, Plaintiff/Appellant,**

v.

**Jeff WISE, Michael Arnett, Individually and d/b/a Arnett Law Firm, and Kelly Sexton, Defendants/Appellees.**

No. 96,297.

Supreme Court of Oklahoma.

Jan. 21, 2003.

As Corrected March 7, 2003.

Faramarz Mehdipour, Cushing, OK, Plaintiff/Appellant Pro Se.

Robert J. Meyer, Arnett Law Firm, Oklahoma City, OK, for Defendant/Appellee.

SUMMERS, J.

¶ 1 Certiorari was granted in this case to address a conflict between decisions of the Courts of Civil Appeals on the issue of whether inmates are statutorily deprived of the capacity to file a civil action against a third party which does not involve an asserted violation of constitutional rights. We answer in the negative.

The statute in question, 21 O.S.1991 § 65, provides as follows:

A sentence of imprisonment under the Department of Corrections suspends all the civil rights of the person so sentenced, except the right to make employment contracts, during confinement under said sentence, subject to the approval of the Director of the Department of Corrections,

when this benefits the vocational training or release preparation of the prisoner, and forfeits all public offices, and all private trusts, authority or power, during the term of such imprisonment. Provided however, such persons during confinement shall not be eligible to receive benefits under the unemployment compensation law.

## I

¶ 2 The facts of this matter are not in dispute. Faramarz Mehdipour was convicted of a felony, and while he was incarcerated filed this tort action below seeking damages from his former attorneys and their law firm for acts which he alleged constituted an abuse of process. The defendants argued that Mr. Mehdipour was under a legal disability to file the suit because under the provisions of Section 65, as interpreted by the decision of the Court of Civil Appeals, Division No. I, in *Welborn v. Wallace,* 2001 OK CIV APP 2, 18 P.3d 1079, his civil rights, including his right to commence this action, were suspended by reason of his imprisonment. The trial court agreed and dismissed the action on defendants' motion.

¶ 3 On accelerated appeal pursuant to Okl. Sup.Ct. Rule 1.36, the Court of Civil Appeals, Division No. IV, declined to follow *Welborn v. Wallace,* supra, and reversed the trial court's judgment. The defendants argue that the appellate court should have followed Welborn, and urge us to vacate its decision refusing to do so and reaching the opposite result.

## II

¶ 4 At common law prisoners serving sentences of imprisonment for life or term of years for conviction of a felony were deemed *"civiliter mortuus"* or "civilly dead." Under statutes enacted following that doctrine, the right to commence a civil lawsuit was often held to be included as one of the rights suspended by imprisonment. See generally *Avery v. Everett,* (Ct.App.N.Y.,1888) 110 N.Y. 317, 18 N.E. 148; Annotation, *Right In Absence of Express Statutory Authorization, of One Convicted of Crime and Imprisoned or Paroled, To Prosecute Civil Action,* 74 A.L.R.3d 680.

¶ 5 With the exception of the *Welborn* decision, however, our courts have consistently declined to interpret our statutory provisions in a manner which would deprive prisoners access to civil judicial process. This is the first time this particular question has been directly before us, but this is not the first occasion this Court has had to consider other issues raising questions about the intent of this statutory language. In doing so, our rulings have long recognized the fundamental policy considerations and constitutional implications which would arise from a holding that prisoners may be deprived of their right to seek the protection of the courts to protect their personal and property rights.

¶ 6 In *Welborn* the Court of Civil Appeals affirmed the dismissal of an inmate's lawsuit brought against his former attorney for the refund of his unused retainer fee, based on its finding that an inmate's legal capacity to file a civil action against a third party which is not related to his incarceration or does not involve an asserted violation of his constitutional rights, is one of the "civil rights" which is lost or at least suspended during imprisonment under Section 65. In support of its conclusion, that court cited *Byers v. Sun Savings Bank,* 41 Okla. 728, 1914 OK 78, 139 P. 948, where this Court had addressed the meaning of the predecessor statute to Section 65, and also relied on the provisions of 12 O.S.2001 § 2003.1, requiring an inmate commencing "a civil action" to supply certain general information including specifying grounds and facts which support an alleged constitutional violation.

¶ 7 In the instant case the Court of Civil Appeals, Division no. IV, declined to follow the ruling of *Welborn v. Wallace, supra,* based on its view that *Welborn* misinterpreted the meaning of 21 O.S. § 65. The court found *Welborn* overlooked the constitutional right of access to the courts guaranteed to all citizens by Article 2, Section 6 of the Oklahoma Constitution, and also misapprehended the teaching of *Byers v. Sun Savings Bank,* supra. Additionally it found that decision's reliance on 12 O.S.2001, § 2003.1, which merely sets forth general requirements for

information inmates must disclose when filing certain civil suits, could not be supported.

¶ 8 We agree. In *Byers* this Court plainly rejected the proposition that under our statutes all civil rights of an incarcerated felon are suspended during his imprisonment, that he is civilly dead. In that case an inmate executed a promissory note and mortgage to his attorney as a fee for obtaining his parole, and later ratified the contract in writing after being paroled. When the attorney attempted to enforce his contract, defendant asserted his civil death, *"civiliter mortuus,"* as a defense to the validity of the note, contending he had been without capacity to enter into the contract by reason of his imprisonment, and also had no power to ratify the contract after his parole as his sentence had not been removed.

¶ 9 The Court discussed at length the question of what rights are forfeited by a convicted felon who was sentenced to prison under the existing statute, Section 2813, Rev. Laws 1910 providing:

"A sentence for imprisonment in the penitentiary for any term less that for life, suspends all the civil rights of the person so sentenced, and forfeits all public offices and all private trusts, authority or power, during the term of such imprisonment."

The Court distinguished between "natural" and "civil rights," the former being those innate rights which are inherent and come from the elementary laws of nature, such as life, liberty, the pursuit of happiness and self-preservation. The comprehensive term "civil rights," the Court explained, pertains to those rights which are the outgrowth of civilization. They arise from the needs of communities and are given and defined by those positive laws which are enacted by communities as necessary to the maintenance of organized government. The Court stated that "political rights", which includes the right of suffrage, and the rights to hold office and participate in the administration of government, are included within "civil rights", which is a broader and more comprehensive term.

¶ 10 The Court found a literal construction of the statute in question could not be justified, as it would lead to a result in conflict with important policies of the law. Considering the provisions of Section 2813 together with Section 732, Wilson's Rev. & Ann. Stat. (section 877, Rev. Laws 1910), which read: "All persons are capable of contracting, except minors persons of unsound mind, and persons deprived of civil rights," the Court found the relevant inquiry to be the extent to which those primary rights endowed by nature are limited by the statute, and stated:

"The language of these statutes, in the absence of other recognized and established principles of law, would seem to divest a citizen of all rights whatsoever and render him absolutely civiliter mortuus, but the principles of law which this verbiage literally imports had its origin in the fogs and fictions of feudal jurisprudence and doubtlessly has been brought forward into modern statutes without fully realizing either the effect of its literal significance or the extent of its infringement upon the spirit of our system of government. At any rate, the full significance of such statutes have never been enforced by our courts for the principal reason that they are out of harmony with the spirit of our fundamental laws and with other provisions of statutes." 139 P. at 949

The Court there noted that the modern trend has been to extend, rather than limit, those natural rights except where they are expressly abridged by statute.

¶ 11 In *Grooms v. Thomas,* 93 Okla. 87, 1923 OK 825, 219 P. 700, this Court upheld the right of a person convicted of a felony and sentenced to the penitentiary for life to convey title to real property and inherit an estate, although our statute at issue, Section 2308, Comp St.1921, provided that "A person sentenced in the penitentiary for life, is thereby deemed civilly dead." Citing *Byers,* the Court found the extent of the civil death effected on the civil rights of a prisoner must be determined in light of other statutory and constitutional provisions, including Art. 2, Section 15 of the Oklahoma Constitution which forbids the enactment of any legislative act that would allow a conviction to ". . . work a corruption of blood or forfeiture of estate." Under that constitutional provision the Court found it was precluded from up-

holding the harsh pronouncement of the statute, and ruled the effect of the constitution was to exclude the real property and estate of a convicted person from the operation of the statute, so that during his imprisonment he could convey and inherit property as if he had not been convicted and imprisoned.

¶ 12 In *Davis v. Pullium*, 1971 OK 47, 484 P.2d 1306, we rejected the assertion that under the same statute, then codified as 21 O.S.1961, § 66, (now repealed, Laws 1976, c. 163, sec.7) the effect of the imposition of "civil death" on a convicted murderer under a life sentence on parole, included incapacity to initiate a civil suit, an action for personal injuries. The Court found the mandate of Art. 2, § 6 of the Oklahoma Constitution, which guarantees access to the courts, would be violated by sustaining the assertion that a legal defense to a private civil action is presented by the claim that plaintiff parolee is "civilly dead". Article 2, § 6 provides:

> "The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administrated without sale, denial, delay or prejudice."

The court relied on *Byers,* and noted that while a felon may lose those rights described as "political" in *Byers,* i.e, he may be disenfranchised, denied the right to hold office or not otherwise allowed to participate in government or to enjoy the full fruits of citizenship, his "natural" rights, those affecting his existence, personal liberties, and safety, are constitutionally protected.

¶ 13 The Court's decision was not based on plaintiff's status as a parolee rather than as a prisoner. The Court spoke strongly of the preposterous situations which would result from treating persons who are very much alive and entitled to legal recognition and protection, as if they were "civilly dead" for all purposes, including filing a civil action. In holding that plaintiff parolee's civil death was not a legal defense to his personal injury action, the Court emphatically found that rumors of his "death" had been "greatly exaggerated." At 1308.

¶ 14 In *Sholer v. State ex rel. Dept. of Public Safety,* 1995 OK 150, 945 P.2d 469, 477, we found that the guarantee of access to the courts provided by Article 2, § 6 applies "to every person", and we held the trial court erred in denying an individual the right to be designated a class representative because she was a convicted felon.

¶ 15 Quite recently this Court addressed the issue of the right of an inmate to bring a civil action in light of the language of Section 65. In *Kordis v. Kordis,* 2001 OK 99, 37 P.3d 866, 870, we found error in the manner in which the trial court conducted proceedings in an inmate's civil action, and failed to give the inmate adequate notice of same. Implicitly recognizing the inmate's right to file the lawsuit, the Court pointed out that serious constitutional questions would arise if we were to construe § 65 as depriving inmates of the legal capacity to enforce vested property rights. The Court explained that such a construction would "violate the due process requirements of the federal and state constitutions and the access to the courts provision of the state constitution. U.S. Const, amend. XIV; Okla. Const. art. 2, §§ 6 & 7. It would also violate 21 O.S.1991 § 68, which provides that '[n]o conviction of any person for crime works any forfeiture of any property, except in the cases of any outlawry for treason, and other cases in which forfeiture is expressly imposed by law.' " *Kordis,* supra, N. 4 at 869.

¶ 16 See also *Dopp v. Okla. Local Bank,* 2002 OK CIV APP 21, 42 P.3d 300, where the Court of Civil Appeals, Division no. III, reversed the trial court's dismissal of an inmate's civil suit pursuant to provisions of Section 65. The court followed the constitutional authority of *Davis* and *Kordis,* and noted that arguments regarding the constitutional right of access to the courts were not before the court in *Welborn.*

¶ 17 It is additionally true that this Court has often implicitly recognized the right of an imprisoned person to commence a private civil action against a third party. See for example the following: *Harmon v. Harmon,* 1997 OK 91, 943 P.2d 599 (incarcerated spouse was entitled to meaningful participation in divorce and custody proceeding he had filed); *Lowe v. Monard,* 1997 OK 100, 942 P.2d 732, (trial court may return civil petition filed by inmate plaintiff only if it fails to comply with statutory requirements for

certain information.); *Harris v. State, ex rel. Macy,* 1992 OK 6, 825 P.2d 1320 (district court may not dismiss a case because of plaintiff prisoner's failure to appear); *Johnson v. Scott,* 1985 OK 50, 702 P.2d 56 (dismissal of inmate plaintiff's small claims case violated the constitutional protections of Art. 2, § 6, as provisions could have been made for his participation other than by physical appearance).

¶ 18 It is always important to recognize that the right to reasonable access to the courts is not the same thing as having a right to appear personally in court to participate in a lawsuit which has been filed there. While those issues are not before us today, we observe that an inmate has no absolute or unconditional right to appear personally in a civil trial where he is a litigant. We have numerous decisions concerning the discretion of the trial court to decide the issue of whether and under what circumstances an inmate may appear in person. See for instance *Kordis v. Kordis, supra; Harmon v. Harmon, supra; Johnson v. Scott, supra.*

### III

¶ 19 In summary, the statute in question does not deprive Plaintiff of his right to file and be heard on his non-constitutionally-based claim against the Defendants. Such a reading of the statute would clearly offend Art. 2 § 6 of the constitution. Although we agree with the ruling of the Court of Civil Appeals, Division IV, we have granted certiorari to reconcile conflicting published opinions among divisions of that Court. Accordingly, the opinion of that Court is vacated, the decision of *Welborn v. Wallace, supra,* is overruled insofar as it is inconsistent with today's pronouncement, the judgment of the District Court is reversed, and the cause is remanded for further proceedings consistent herewith.

¶ 20 WATT, C.J., OPALA, V.C.J., HODGES, LAVENDER, KAUGER, BOUDREAU, WINCHESTER, JJ., concur.

¶ 21 HARGRAVE, J., Not participating.