ANNA WILLINGHAM, ET AL., APPELLANTS, VS. ZIBA KING, ET AL., APPELLEES.

1. A person imprisoned in the penitentiary for life is not civilly dead, and may sue in his own name, and it is improper to join another as *prochein ami* a party complainant.

2. Such person cannot maintain a suit in equity against his wife and another to whom she has sold his property, for the purpose of adjusting the respective rights of the three, on an allegation in his bill that the sale is void, and an admission that she has an interest in the property which should be determined—the wife having no interest in his property which can become the subject of suit between them under such circumstances. He has remedy at law against the purchaser, if the sale was void.

3. While irremediable injury is a ground of equity jurisdiction, a general allegation of such injury, not stating facts upon which the allegation is based, nor showing how or why the damages will be irremediable, is not sufficient.

Appeal from the Circuit Court for Polk county.

The facts of the case are stated in the opinion.

*G. A. Hanson* for Appellants.

*Wall & Turman* and *Sparkman & Sparkman* for Appellees.

THE CHIEF-JUSTICE delivered the opinion of the court:

William W. Willingham, of Polk county, was convicted of murder July 19, 1884, and sentenced to the penitentiary for life. On the 5th day of May, 1886, the wife, A. E. Willingham, sold to Ziba King a large stock of cattle and other personal property owned by him at the time of his sentence. Thereupon the said W. W. Willingham and his mother, Anna Willingham, as next friend, filed a bill against the wife and King, denying the wife's right to sell, and praying for an injunction against removal or appropriation of said property by King until the interest of the wife be ascertained and decreed.

A. E. Willingham, the wife, and King, answer separately, but both to the effect that the mother could not, under the circumstances, be heard in court as next friend of her convict son, and that the convict had given the property to his wife, which is evidenced by letter as follows :

" BARTOW, Fla., July the 24th.

" MY DEAR WIFE: I have to leave you in the morning forever, and will not see you any more. I would like to told you good-bye if I could.

" Take care of yourself and what you have got. I give you all of my property, and take care of it the best you can *so*.

" So my love and respects to you until death.

" W. W. WILLINGHAM."

By virtue of this letter they claim that she had full right to dispose of the property. They also claim benefit of demurrer to the equity of the bill.

This is in brief the controversy, and the court below having granted a temporary injunction, on further hearing after the answers filed dissolved it and dismissed the bill. The appeal is from the decree dismissing the bill.

The eight errors assigned by appellant we need not recite in detail, as they present only two questions which we shall consider, the others being out of our reach under our conclusion that the case is not one for equity jurisdiction.

I. The suit is brought in the name of "W. W. Willingham and Anna Willingham, his mother, and *prochein ami.*" We are unable to see why the mother was joined as complainant in the character of next friend, or why she was joined at all. If the intention was to bring the suit for the son, by his mother as next friend, this was not done, but he, in his own name, is one party, and she, as mother and next friend, another. Either he should have been sole complainant, or he should have been complainant through his next friend, and should not have joined her, as he did, as a second one. We regard the words " his mother and *pro chein ami,*" as mere *descriptio personæ,* so that she is to be considered as a party in her individual character. Thus viewed, she was made a party to the bill improperly.

But even if the suit had been brought in the son's name, by the mother as next friend, we do not see that this would have been any better. Why bring it so? Obviously because the son, in consequence of his imprisonment for life, labors under disability which incapacitates him from suing. Admitting this to be the case, how does that authorize the mother to sue for him? Not by virtue of an appointment by him, because his disability would likewise incapacitate him from making any appointment. She would be a mere

volunteer, acting without legal right or authority. We conclude, therefore, that the mother's name had, and could have, no proper place in this suit.

II. When we come to the subject matter of the suit, does that make a case for equity jurisdiction? We will treat 'this question, as if the suit were by W. W. Willingham alone as complainant, on the assumption that notwithstanding his imprisonment for life he is not debarred the right to sell his property, or to give it away, as it is claimed he did to his wife, or to give direction as to its management, including the bringing or defending of actions pertaining to it. We may say, as to this assumption, that it must be correct if he is not civilly dead by reason of such imprisonment; and that he is not, seems to be the rule in this country. See 6 Johnson's Chancery, 118. The same case holds that such person has "a standing in a court of justice."

We proceed to enquire whether the bill (W. W. Willingham being complainant) authorizes equity jurisdiction. The fact that he is in prison is no ground of equity. If he can sue in a chancery court, as we think he may, he can also sue in a common law court, the choice depending on the nature of the subject matter of the suit. So we will consider the case with that feature eliminated. The controversy is about a stock of cattle owned by complainant when he was sentenced to imprisonment. The wife, he alleges, confederated and conspired with King to sell and dispose of all his personal property, and she did sell the cattle to King, which was done without complainant's consent, and against his positive wishes and instructions. He further alleges that said sale is void, but that King is endeavoring to take possession of the cattle for his own use, and has contracted for the sale and shipment of a large

number of them to Cuba, and has employed men to hunt and drive them out of the range, and out of the United States, and will do so unless restrained by the court. Admitting that his wife has an interest in the property, but that such interest can be determined *only* by a court of equity, and alleging that the removal of the cattle will be an irremediable injury to him, he prays for temporary injunction against King until the wife's interest can be ascertained and decreed, and for the appointment of a receiver to take charge of the cattle until the rights of the parties can be determined judicially by the court. These are the only prayers, except for subpœna and general relief.

The object of the injunction asked is to stay removal of cattle until the wife's interest can be decreed. It is enough to say, as to this, that if the property is his, and he is not civilly dead, there is not shown any interest of the wife that can become the subject of a decree as between him and her.

As to the appointment of a receiver, that will not be done unless the equities of the bill are clear, and the necessity for a receiver made apparent. Applying this test, we have a case in which the party has a remedy at law for the recovery of his cattle. There is no allegation that a multiplicity of suits would be necessary to the recovery, or any other which would justify going into a chancery court when there is a remedy at law, except the general allegation that the removal of the cattle will be an irremediable injury. But that allegation is faulty in not stating facts upon which it is based, and in not showing how and why the damages will prove irreparable. 2 High on Injunctions, §1581; Amelung *et al.*, vs. Seekamp, 9 Gill & Johnson, 468.

Seeing that the real question is whether the sale of the cattle by the wife was a valid sale, no fraud or other equit-

able ingredient being alleged, that is a case for the trial of title at law, and a chancery court will not entertain it. On sufficient grounds that court will grant an injunction to await the result of a trial at law, but in this case, even if such ground existed, there is no intimation of either a pending or contemplated trial of title except in the proceedings of the case itself, and that is not allowable.

The decree is affirmed.