# WASHINGTON.

GEORGE N. KENYON, Appellant, *vs.* WILLIAM G. SAUNDERS, *et al.*, Executors.

The husband's right to the surplus of his deceased wife's personal estate after payment of her debts, in case of her intestacy, does not depend upon the fact of his own administration of her estate.

Pub. Stat. R. I. cap. 184, § 7, which provides that the husband shall be entitled to the administration of the personal estate of his wife, in case of her intestacy, and shall not be compelled to distribute the same among the next of kin, "but shall have and retain the surplus thereof, after payment of her debts, for his own use," in a re-enactment of the statute 29 Car. II. c. 3, § 25, and merely declaratory of the common law rule that the husband was entitled to administer on the estate of his deceased wife, and also to have to his own use the surplus after payment of her debts whether he or another administered.

Legislation in Rhode Island in regard to the property of married women has so far changed the common law rule as to secure to a wife all her estate during her life, with the power of disposition by will, but does not cut off the husband's right, in case she dies intestate, to administer on her personal estate, and to have the surplus to his own use after payment of her debts.

A convict is neither civilly dead nor deprived of his right of property, and may enforce such right by suit when it is necessary to do so.

A married woman whose husband was serving a sentence for a term of years in the state prison for manslaughter died leaving a will which was admitted to probate;

*Held*, that the husband had such an interest in the personal estate of his wife, if

she died intestate, as to entitle him to contest the validity of the will although he could not administer on her estate.

*Held*, further, that the husband was entitled to prosecute an appeal from the decree of the Probate Court admitting his wife's will to probate, as provided by the Judiciary Act, cap. 28, § 1, and to give the bond required thereby in order to take an appeal.

APPELLANT'S petition for a trial.

*Providence, May* 22, 1894. STINESS, J. Susan C. Kenyon died in August, 1893, leaving a will, from the probate of which her husband, George N. Kenyon, appealed. At the time of taking the appeal he was serving a sentence of fifteen years imprisonment in the state prison for the crime of manslaughter, imposed by this court at the March Term, 1893, which sentence is still in force. A motion to dismiss the appeal was granted by the Common Pleas Division on two grounds : *first*, that said George N. Kenyon was incapacitated, by reason of his sentence and imprisonment to take the appeal or to sign and seal the appeal bond required by law ; and *second*, that said George N. Kenyon is not of capacity to administer upon his wife's personal estate, and hence he cannot take the surplus of her estate after payment of her debts, because no children having been born of the marriage, he has no title by curtesy in the real estate, and cannot take any of the personal estate if it be found that she died intestate.

The two questions thus raised are whether the appellant had the right to take an appeal, and whether he has any interest in her property to entitle him to contest the validity of her will. Undoubtedly under the common law of England a person convicted of a felony could not maintain an action. This rule was founded upon the reason that as the conviction worked a forfeiture of goods to the crown, he had no longer any property to sue for. But under our law, Pub. Stat. R. I. cap. 248, § 34, no conviction or sentence for any offence whatsoever works a forfeiture of estate. The reason for the common law rule does not here exist, and an enforcement of it might practically work a forfeiture of estate. Indeed, this case is a plain example of the possibility. Here, assuming the appellant's interest in the estate and the in-

validity of the will, he is the party to take an appeal, and it must be taken within forty days from the probate.[1] If it should be held that his conviction deprives him of the right to appeal, then he would thereby also be deprived of the power ever to enforce his right to the property itself. Notwithstanding the difficulties which may attend cases of this kind, such a rule would be contrary to the spirit of the statute and unsupported by the reason upon which it was originally based. A convict is neither civilly dead, nor deprived of his rights of property ; and, if this be so, he should be entitled to enforce such right when it is necessary to do so. See *Platner* v. *Sherwood*, 6 Johns. Ch. 118 ; *Cannon* v. *Windsor*, 1 Houst. (Del.) 143 ; *Dade Coal Co.* v. *Haslett*, 83 Ga. 549 ; *Willingham* v. *King*, 23 Fla. 478. The person aggrieved, in this case the husband, is the one who is to claim the appeal, and the statute requires that bond shall then be given to the Court of Probate to prosecute the appeal or to pay costs. It does not require the appellant to be a party to the bond ; but the further question arises, in this case, does the fact that the convict is the principal in the bond make it void ? If he retains his right of property, it cannot be void upon principle. Does the statute prohibit it ? Pub. Stat. R. I. cap. 248, § 52, prohibits a convict from making a will or any conveyance of his property or any part thereof during his imprisonment. The giving of an appeal bond is not, strictly speaking, a conveyance of property ; on the contrary it is an attempt to protect and secure property. Still it may be said that the liability under the bond may amount to a disposition *pro tanto*. But the same liability

---

[1] Judiciary Act, cap. 28, § 1, provides as follows :

SECTION 1. Any person aggrieved by any order or decree of any court of probate, or of any town council, may, unless provision be made to the contrary, appeal therefrom to the supreme court, within forty days next after such order or decree shall have been made, upon giving bond, signed by himself, or by some one in his behalf, to such court of probate or town council, with surety or sureties, satisfactory to such court or council, or to the clerk thereof if such court or council shall not then be in session, to prosecute such appeal with effect, or, in default thereof, to pay all intervening costs and damages and such costs as the respective division of the supreme court shall tax against the appellant.

for costs would follow in an ordinary action without a bond, and so if the statute is to be construed to prohibit the incurring of liability under an appeal bond, it prohibits equally the incurring of liability by the bringing of a suit, thereby forbidding the convict to sue, and in this way depriving him of the right to secure that which may be his. We do not think that this is the purpose or scope of the statute, and we decide that the bond is not invalid by reason of its execution by said George N. Kenyon.

The next question is whether the appellant had sufficient interest in the estate of his deceased wife to enable him to claim an appeal. The counsel for the appellees correctly says in his brief: "Under the common law the personal estate of the wife became the husband's, and on her death he could administer on her estate and retain the surplus after paying her funeral charges; and if another administered he held the surplus as trustee for the husband." *Hoppiss* v. *Eskridge*, 2 Ired. Eq. 54; *Whitaker* v. *Whitaker*, 6 Johns. 112; *Bryan* v. *Rooks*, 25 Ga. 622; *Lee* v. *Wheeler*, 4 Ga. 541; *Hoskins* v. *Miller*, 2 Dev. (N. C.) Law, 360; *Miller* v. *Miller*, 1 J. J. Marsh. (Ky.) 169; *Atherton* v. *McQuestin*, 46 N. H. 205. In the statute of 29 Charles II. c. 3, § 25, this right of the husband was declared to be independent of the statute relating to distribution, 22 & 23 Charles II. c. 10, and to extend to the rights, credits, and personal estate of the intestate wife. But it is claimed that under the sweeping changes which have been made in regard to the property of married women, a husband's rights are so abridged that nothing remains to him but the right to administer, and if he does not administer, as one in prison cannot, he can have no interest at all in the wife's estate, because he cannot reduce it to possession. We do not think this is so. In the first place there seems to be no adequate reason for making a husband's right depend upon the mere fact of his own administration, since he was entitled to the surplus at common law, whether he or another administered. Such a construction would discriminate against an absent, *non compos*, or disabled husband, whose rights ought to be the same as his

who can take administration. Again, the language of our statute, Pub. Stat. R. I. cap. 184, § 7, not only provides that the husband shall be entitled to administration of the personal estate of his wife, in case of her intestacy, but also that he shall not be compelled to distribute the same among the next of kin, "but shall *have* and *retain* the surplus thereof, after payment of her debts, for his own use." If his right is to depend upon his administration the word *retain* would be sufficient to cover such right; but the provision that he shall *have* the surplus seems to be of broader significance and to imply an intention to cover the case of administration by another. The statute is evidently a reenactment of 29 Charles II. and is declaratory of what is called the common law rule, which, as we have seen, secures the right of the husband in either event.

We come then to the question whether the legislation in regard to the property of married women has changed the common law rule in cases of intestacy. Under the law of 1844, (Pub. Laws 1844, p. 270,) the property of a married woman was so far secured to her own use as to exempt it from liability for the debts of her husband; and in Gen. Stat. R. I. 1872, cap. 152, § 1, it was absolutely secured to her sole and separate use. As to real estate, this court expresses the opinion, *In re the Voting Laws*, 12 R. I. 586, that the latter change destroyed a simple tenancy by marital right. The statute relating to intestate personalty, however, still remains. With regard to the effect of legislation upon the husband's right in the personal estate of an intestate wife, we have been somewhat surprised not to find a greater abundance of authority. Mr. Schouler, in his work on Executors & Administrators, § 496, says: "So greatly, however, have the ancient rights of husband and wife been changed by modern legislation, both in England and the United States, that the present legal rule on this subject cannot be stated with precision." The cases cited by him in the note differ; some, because of peculiar statutory provisions, as in New Hampshire, where the husband's right is expressly conferred by statute, and some, as in Vermont and

Illinois, because the statute of 29 Charles II. was never in force in those states. Mr. Bishop, in 2 Bishop on the Law of Married Women, § 560, suggests a solution of the difficulty by saying, "In the absence of statutory interposition, the husband will have the same right to administer which he had before, and the same freedom from accountability for her assets received." This is the rule adopted in New York. In *Robbins* v. *McClure*, 100 N. Y. 328, it is held that the statutes which authorize a married woman to hold property as if unmarried do not deprive the husband of his common law right to her personalty when she dies intestate. The opinion reviews the line of decision and legislation in that state. See also *Ransom* v. *Nichols*, 22 N. Y. 110 ; *Olmsted* v. *Keyes*, 85 N. Y. 593 ; *Barnes* v. *Underwood*, 47 N. Y. 351, where this subject is very thoroughly discussed. We think this rule is in accordance with sound reason. The statute secures to a wife all of her estate during her life, with the power of disposition at her death. If she does not dispose of it, the right of a husband not being expressly cut off, in such a case the most natural inference is that it remains as it was before, especially in view of the fact that the statute relating to the husband's right in intestate property has remained unchanged. We believe that this is the rule which has been followed in the courts of probate in this State. We therefore decide that George N. Kenyon has an interest in the intestate personalty of his wife, even though he cannot administer it, which entitles him to contest the validity of the will of his wife and that his appeal was erroneously dismissed.

*George T. Brown & Frederick C. Olney*, for appellant.

*Nathan B. Lewis*, for appellees.