712 F.2d 854
 Charles C. HOLMAN, Jr., Appellee,
v.
Gary J. HILTON, Superintendent, New Jersey State Prison,
Trenton, Robert Hatrak, Superintendent, New Jersey State
Prison, Rahway, Donald Tucker, Assistant to the
Superintendent, New Jersey State Prison, Trenton, Joseph
Call, Chairman of Institutional Classification Committee,
Captain A. Richardson, Captain at New Jersey State Prison,
Trenton, Captain R. Curran, Captain at New Jersey State
Prison, Rahway, and Lieutenant Williams, Lt., at New Jersey
State Prison, Trenton, Appellants.
Charles C. HOLMAN, Appellee,
v.
Gary J. HILTON, Superintendent, New Jersey State Prison at
Trenton; Alan R. Hoffman, Former Superintendent, New Jersey
State Prison at Trenton; William Baum, Investigations
Officer, New Jersey State Police; Lawrence Ashton,
Lieutenant, New Jersey State Prison; James Williams,
Lieutenant, New Jersey State Prison at Trenton,
individually, and in their official capacities.
Appeal of Gary J. HILTON, Alan R. Hoffman, William Baum,
Lawrence Ashton and James Williams.
 No. 82-5563.
 United States Court of Appeals,
Third Circuit.
 Argued April 26, 1983.
Decided July 6, 1983.
 
 Irwin I. Kimmelman, Atty. Gen. of N.J., James J. Ciancia, Asst. Atty. Gen., Peter R. Freed, Deputy Atty. Gen. (argued), Trenton, N.J., for appellants.
 Joseph H. Rodriguez, Public Defender of N.J., Arthur Penn, Asst. Public Defender, Paul M. Klein, Asst. Public Defender (argued), East Orange, N.J., for appellees.
 Before HUNTER and HIGGINBOTHAM, Circuit Judges, and STAPLETON,* District Judge.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 Gary J. Hilton, Superintendent of the New Jersey State Prison at Trenton, and other New Jersey State Prison employees, individually and in their official capacities (hereinafter cited as "defendants" or the "State"), appeal from an interlocutory order of the United States District Court for the District of New Jersey granting Charles Holman's motion for summary judgment. Holman had moved for summary judgment claiming that N.J.Stat.Ann. § 59:5-3 (West 1982) violated the due process clause of the fourteenth amendment. Because we conclude that section 59:5-3 deprives Holman of his statutorily created property rights without due process of law, we affirm.
 
 
 2
 * Charles Holman was convicted of murder in the state courts of New Jersey in 1970 and sentenced to a life term of imprisonment. From the time of his conviction until December, 1981, he was incarcerated in various institutions in the New Jersey state prison system.
 
 
 3
 On August 2, 1976, while an inmate at Trenton State Prison, Holman filed a complaint in replevin in the Mercer County Court. Naming seven defendants Holman sought the return of certain items of impounded personal property or, alternatively, the payment of damages of $613. Upon motion by the State, the Mercer County Court dismissed Holman's complaint on the basis of its conclusion that Holman's action was barred by section 59:5-3.[1]
 
 
 4
 In 1978 and 1979, Holman submitted a variety of claims for items of personal property which had been allegedly destroyed in a fire at Trenton State Prison. Holman had left those items behind when he had been transferred to Rahway State Prison. Holman first unsuccessfully petitioned Gary Hilton, the Superintendent of Trenton State Prison, for compensation. Holman then filed a claim, on a form entitled "Trenton State Prison Claim for Damage, Lost, or Destroyed Property," with the Internal Affairs Unit, the prison entity authorized to receive and consider such claims. On March 15, 1979, an officer of the prison issued a written determination that:
 
 
 5
 Due too [sic] Holmans [sic] prior knowledge of the impending transfer to Rahway, and his refusal to comply with this order, to include the packing of his personal property. The Institution will not assume the responsibility for the items alleged to be lost.
 
 
 6
 Letter from Walter C. Wise, an employee of the Internal Affairs Unit at Trenton State Prison.
 
 
 7
 On August 13, 1979, Holman commenced his pro se action under 42 U.S.C. § 1983 (Supp. IV 1980). Holman contended that section 59:5-3, and the actions of the defendants, caused him to be deprived of his property without due process of law. In his complaint Holman sought a declaratory judgment holding section 59:5-3 unconstitutional, compensatory and punitive damages for the items of personal property allegedly lost, and injunctive relief.
 
 
 8
 By letter to the district court dated December 18, 1981, Holman moved for summary judgment on the issue of the constitutionality of section 59:5-3. By opinion filed on July 9, 1982, the district court ruled that section 59:5-3 violates the fourteenth amendment of the United States Constitution. Holman v. Hilton, 542 F.Supp. 913 (D.N.J.1982). On August 5, 1982, the district court issued orders to that effect. On August 13, 1982, defendants petitioned for permission to appeal pursuant to 28 U.S.C. § 1292(b) (1976) and Fed.R.App.P. 5. The petition was granted on September 3, 1982. The State's application for a stay of the district court's August 5, 1982 order was denied on October 20, 1982.
 
 II
 
 9
 * Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), govern our resolution of this appeal. In Parratt the prisoner brought a 42 U.S.C. § 1983 (Supp. IV 1980) action alleging a negligent deprivation of property by prison officials, in violation of the fourteenth amendment. The Supreme Court held, as a general matter, that section 1983 affords a remedy for negligent deprivation of federally protected rights by persons acting under the color of state law. Parratt, 451 U.S. at 535, 101 S.Ct. at 1912-1913. The Court went on to state, however, that the fourteenth amendment only protects against deprivations occurring "without due process of law." Id. at 537, 101 S.Ct. at 1914. Applying that principle to the facts before it, the Court held that Parratt's section 1983 claim was precluded inasmuch as Parratt had not been deprived of property without due process. The tort claims procedure provided by the State of Nebraska, which had been available to Parratt at the time of the loss, satisfied the requirements of the due process clause. Id. at 544-45, 101 S.Ct. at 1917-18.[2]
 
 
 10
 New Jersey also provides a remedy to persons who believe they have suffered a tortious loss at the hands of the State. See New Jersey Tort Claims Act, N.J.Stat.Ann. §§ 59:1-1 to 59:12-3 (West 1982) (hereinafter cited as N.J.T.C.A.). Under that statute prison inmates are entitled, as they were at common law, to a cause of action against prison officials and other public employees for injuries resulting from tortious acts committed during the performance of duties of a ministerial nature. Furthermore, prisoners are entitled to sue public officials for any tortious act committed outside the scope of their employment or characterized by malice or willful misconduct. N.J.Stat.Ann. § 59:3-14 (West 1982). Finally, inmates are entitled to a cause of action against the State itself, under a respondeat superior theory, for the misconduct of public officials. N.J.Stat.Ann. § 59:2-2 (West 1982).
 
 
 11
 In contrast to the procedures available to prisoners in Nebraska, however, a prisoner's recourse to suit under the New Jersey Tort Claims Act is barred during the term of a prisoner's incarceration by section 59:5-3. N.J.Stat.Ann. § 59:5-3 (West 1982). It is that limit put on his ability to assert his statutorily created cause of action which Holman contends violates the strictures of due process. As such, this case is one step removed from Parratt, and our disposition must instead be guided by the principles articulated by the Court in Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).
 
 
 12
 In Logan the plaintiff filed a complaint before the Illinois Fair Employment Practices Commission complaining that he had been discharged in violation of the Illinois Fair Employment Act ("FECA"). Due to inadvertence, however, the Commission failed to convene a fact-finding conference on the claim within 120 days of filing, as required by statute. Logan's employer moved to dismiss the action before the Commission but that motion was rejected. On appeal the Illinois Supreme Court held that the failure to hold a timely conference deprived the Commission of jurisdiction to consider the charge, and thus the Commission's error forever extinguished Logan's cause of action.
 
 
 13
 The United States Supreme Court reversed. The Court initially reaffirmed its holding in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), that "a cause of action is a species of property protected by the Fourteenth Amendment Due Process Clause." Logan 455 U.S. at 428-9, 102 S.Ct. at 1154. Finding that the State's failure to hold a timely hearing had deprived Logan of a protected property right, the Court then applied the familiar balancing test of Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-03, 47 L.Ed.2d 18 (1976), and held that the procedure by which a claim could be terminated through no fault of the claimant failed to meet the minimum requirements of procedural due process.[3]
 
 
 14
 The Supreme Court was careful to note that "the State remains free to create substantive defenses or immunities for use in adjudication--or to eliminate its statutorily created causes of action altogether--just as it can amend or terminate its welfare or employment programs." Logan, 455 U.S. at 432, 102 S.Ct. at 1156 (emphasis supplied). Thus, as the Court stated in Martinez v. California, 444 U.S. 277, 282, 100 S.Ct. 553, 557, 62 L.Ed.2d 481 (1980), states remain free to define or create property interests as they see fit. See Logan, 455 U.S. at 433, 102 S.Ct. at 1156. The Court held, however, that the 120 day limitation on convening a fact-finding conference was only a procedural limitation on Logan's ability to assert his rights, not a substantive element of his claim. Accordingly, that limitation on Logan's ability to assert his Fair Employment Practices claim had to be analyzed in terms of the constitutional requirements of due process. See Logan, 455 U.S. at 432, 102 S.Ct. at 1156; see Vitek v. Jones, 445 U.S. 480, 490, 100 S.Ct. 1254, 1262, 63 L.Ed.2d 552 (1980); Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160-61, 47 L.Ed.2d 405 (1976).
 
 
 15
 The Supreme Court specifically distinguished its decision in Parratt. It noted that Parratt involved a tortious loss of property as a result of a random and unauthorized act by a state employee. In contrast Logan involved the destruction of a protected property interest by operation of law. Parratt, the Court noted, was not designed to reach such a situation. "Unlike the complainant in Parratt, Logan is challenging not the Commission's error, but the 'established state procedure' that destroys his entitlement without according him proper procedural safeguards." Logan, 455 U.S. at 436, 102 S.Ct. at 1158. Thus it was that procedure which needed to be analyzed under the due process clause.[4]
 
 
 16
 Reading Parratt and Logan together, it is plain that while Parratt may relegate a prisoner to his state tort remedies when such remedies are available, Logan provides the framework for analyzing the constitutional adequacy of state procedural limitations on those remedies. Therefore the principles of Logan are applicable in cases where it is claimed that the State refuses to make available to a claimant the established state procedures otherwise available for redress of deprivations of property. See Logan, 455 U.S. at 435-6, 102 S.Ct. at 1157-58.
 
 B
 
 17
 At the outset, we must ask whether section 59:5-3 would be constitutional in the absence of an alternative administrative mechanism for redress of deprivations of property. We apply the familiar two step inquiry: was Holman deprived of a protected property interest, and if so, did that deprivation meet minimal constitutional standards? Logan, 455 U.S. at 428, 102 S.Ct. at 1154. Using that analysis we agree with the district court that, under the principles of Parratt and Logan, the bar created by section 59:5-3 is, standing alone, infirm.
 
 
 18
 First, it is clear that section 59:5-3 acts to deprive Holman of a protected property interest. As a prison inmate Holman is now theoretically entitled under the New Jersey Tort Claims Act to a cause of action against state employees, as well as against the State itself, for injuries resulting from tortious acts. See Holman, 542 F.Supp. at 918. Under the principles of Logan, it cannot be disputed that Holman's right of action is a species of property protected by the Fourteenth Amendment. See Logan, 455 U.S. at 428 & n. 4, 428-33, 102 S.Ct. at 1154 & n. 4, 1154-56. Once created, "the adequacy of statutory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms." Logan, 455 U.S. at 432, 102 S.Ct. at 1156 (quoting Vitek v. Jones, 445 U.S. 480, 490-91 & n. 6, 100 S.Ct. 1254, 1262-63 & n. 6, 63 L.Ed.2d 552 (1980)). By its terms, however, section 59:5-3 precludes Holman from asserting that cause of action until he is released from prison.[5] We agree with the district court that in so doing, it deprives Holman of a protected property interest. Holman, 542 F.Supp. at 922.[6]
 
 
 19
 Having properly determined that section 59:5-3 deprived Holman of a protected property right, we think that the district court also correctly weighed the competing interests in its application of the due process balancing test[7] to determine that that deprivation was constitutionally improper. See Mathews v. Eldridge, 424 U.S. at 335, 96 S.Ct. at 903; Memphis Light Gas & Water Div. v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).
 
 
 20
 Holman's interest is quite substantial. Succinctly stated, that interest consists of a cause of action authorized by statute to secure compensation for alleged tort damages committed by the State through its employees. See Wolff v. McDonnell, 418 U.S. 539, 555-56, 94 S.Ct. 2963, 2974-75, 41 L.Ed.2d 935 (1974). That property interest is of substantial importance to Holman, as its arbitrary denial could leave him with an uncompensated loss of what little personal property is allowed him in prison. Therefore, as a life term prisoner, his interest is of no small moment. See Logan, 455 U.S. at 434, 102 S.Ct. at 1157; Parratt, 451 U.S. at 541, 101 S.Ct. at 1916. It is also clear that the statute effects a permanent deprivation for prisoners like Holman suffering long-term or life sentences. See Logan, 455 U.S. at 434, 102 S.Ct. at 1157. Even if Holman were eventually released, he probably would not be able to marshal the witnesses and evidence necessary to prevail on his claim years after the commission of the alleged tort. He would thus lose his cause of action as surely as if it had been taken from him by operation of law. Furthermore, the procedural barrier created by the statute creates "an unjustifiably high risk that meritorious claims will be terminated." Logan, 455 U.S. at 434-35, 102 S.Ct. at 1157; see Mathews v. Eldridge, 424 U.S. at 335, 96 S.Ct. at 903. If Holman should die while in prison, his ability to recover would die with him. Even if Holman retains the theoretical right to assert his cause of action at some time in the future, the time delay occasioned by operation of the statute will substantially increase the risk of governmental error and result in the de facto denial of his claims.
 
 
 21
 Balanced against Holman's interest and the possible risk of governmental error are the four interests New Jersey advances for withholding a prisoner's N.J.T.C.A. cause of action until he is released from prison. Section 59:5-3 was enacted " in the interest of prison harmony and in order to avoid the erosion of prison discipline as well as to discourage the bringing of frivolous suits and the traditional 'outing in court' enjoyed by many inmates in connection therewith." N.J.Stat.Ann. § 59:5-3 (West 1982) (legislative comment). Upon close examination, however, we agree with the district court that the State's interests in denying prisoners' their cause of action under the N.J.T.C.A. until their release from prison are "not ... particularly strong" Holman, 542 F.Supp. at 926.
 
 
 22
 The State, of course, does have a legitimate interest in maintaining its control over its prison population. See Hewitt v. Helms, --- U.S. ----, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983); Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974-75, 41 L.Ed.2d 935 (1974). However, we are not persuaded that section 59:5-3 operates to ensure such control. Section 59:5-3, to the extent that it denies prisoners access to state courts, would tend to increase prison discord by blocking a significant means of orderly dispute resolution. Furthermore, it is possible that section 59:5-3 will merely reroute such disputes to federal court. Indeed this result is mandated by Parratt, which must be read as authorizing section 1983 actions for negligent loss of property where adequate state procedures are not available.
 
 
 23
 Similarly we are unpersuaded that section 59:5-3 advances the State's legitimate interest in discouraging "frivolous" suits filed by inmates hoping to enjoy a "field trip" away from prison. First, the statute will not discourage the bringing of such suits as it will merely shift them from state to federal court. See Parratt, 451 U.S. at 543-44, 101 S.Ct. at 1916-17. In addition, the statute makes no distinction between "truly frivolous" suits brought by prisoners and those which might be characterized as substantial. Lastly, the statute ignores that both the state and the federal courts already employ precisely drawn procedures for disposing of truly frivolous complaints. See Fed.R.Civ.P. 12(b)(6), Fed.R.Civ.P. 56.
 
 
 24
 Weighing all the interests we agree with the district court that, in the absence of administrative remedies, section 59:5-3 would deny New Jersey prison inmates with long term or life sentences the minimally adequate "procedures to which they are entitled under the Constitution for the vindication of their state-created right to sue the state and state officials for the negligent infliction of injuries to person or property." Holman, 542 F.Supp. at 926; see Wolff v. McDonnell, 418 U.S. at 556, 94 S.Ct. at 2974-75. As a practical matter section 59:5-3 deprives a long-term prisoner who wishes to assert his rights under the New Jersey Tort Claims Act the opportunity to assert any claim for the loss of personal property. It thus creates a situation which unreasonably increases the risk of governmental error in effectively and efficiently resolving those claims. Standing alone, therefore, section 59:5-3 deprives inmates of an opportunity "for a hearing appropriate to the nature of the case" granted at "a meaningful time and in a meaningful manner" to resolve property disputes. Logan, 455 U.S. at 437, 102 S.Ct. at 1159 (quoting Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971), and Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)).[8]
 
 C
 
 25
 Having concluded that section 59:5-3 would, in the absence of administrative remedies, unconstitutionally deprive Holman of a protected property interest without due process of law, we must now decide whether the administrative remedies available to Holman provide an alternative constitutional means for protecting his property rights.[9] The State argues that it did afford Holman two such constitutionally adequate alternative procedures--the notice requirement set out in N.J.Stat.Ann. § 59:8-3 (West 1982) and the formal claim review procedure provided in N.J.Admin.Code tit. 10A, § 31-3.21. Neither procedure, however, provides Holman with "some kind of ... opportunity to be heard ... at a meaningful time and in a meaningful manner." Parratt, 451 U.S. at 540, 101 S.Ct. at 1915; see Logan, 455 U.S. at 433, 102 S.Ct. at 1156 ("it has become a truism that 'some form of hearing' is required before the owner is finally deprived of a protected property interest"). Because neither State alternative administrative remedy provides Holman with any kind of meaningful opportunity to be heard at any stage in the claims procedure, and because we conclude that the State's interest in fashioning such "streamlined procedures" do not justify the denial of such an opportunity, see Logan, 455 U.S. at 434, 102 S.Ct. at 1157; Mathews, 424 U.S. at 334-35, 100 S.Ct. at 902-03, we hold that the administrative procedures available to Holman effected a deprivation of property without due process.[10]
 
 
 26
 Section 59:5-3 provides that a prisoner may file an administrative claim in accordance with the procedures contained in chapter 8 of the New Jersey Tort Claims Act, N.J.Stat.Ann. §§ 59:8-1 to 59:8-11 (West 1982), "anytime after injury." Chapter 8 establishes, as a mandatory procedural prerequisite to filing a suit against a public entity, that an administrative claim be lodged with either the State Attorney General or the department or agency "involved in the alleged wrongful act or omission" within 90 days of injury. N.J.Stat.Ann. § 59:8-7 (West 1982); see N.J.Stat.Ann. § 59:8-3 (West 1982). The ostensible purpose of the filing requirement is twofold:
 
 
 27
 (a) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (b) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense.
 
 
 28
 N.J.Stat.Ann. § 59:8-3 (West 1982) (legislative comment). Thus, those procedures seem designed primarily to give the State notice of impending legal actions, rather than to provide prisoners with an alternative to court actions under the N.J.T.C.A.
 
 
 29
 Under the "formal" claim review procedure provided prisoners pursuant to N.J.Admin.Code, tit. 10A, § 31-3.21, prisoners may submit claims for lost, damaged, or destroyed property to a specially created unit that is empowered to receive, investigate, and resolve such claims. After investigation the reviewing officer makes a determination and communicates his decision to the prisoner. Such a decision is final and, apparently, unappealable. Holman had filed a claim pursuant to this procedure before filing suit in state court.[11]
 
 
 30
 To determine the constitutional adequacy of these procedures as substitutes for the tort claims procedures under the N.J.T.C.A., we must balance the magnitude of Holman's interests against those advanced by the State as reasons for imposing the challenged procedures, in light of the likelihood of possible governmental error if claims are resolved pursuant to those procedures. See Hewitt v. Helms, 103 S.Ct. at 871; Logan, 455 U.S. at 434, 102 S.Ct. at 1157. We have previously found that Holman's interest in advancing his cause of action for redress of lost property is substantial. The administrative procedures supplied by the state, however, provide prisoners with the opportunity to "present" their claims at most only on paper. The inherent frailties of procedures that depend exclusively upon written presentations for the resolution of individual claims has long been recognized. Goldberg v. Kelly, 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970); see Logan, 455 U.S. at 433, 102 S.Ct. at 1156. The observations and concerns articulated in the civil context, see Goldberg, 397 U.S. at 269, 90 S.Ct. at 1021, apply with equal force in the prison context presented by this case. See Davis v. United States, 415 F.Supp. 1086, 1093-94 (D.Kan.1976).[12]
 
 
 31
 The State advances several considerations which it contends outweigh the need to provide Holman with any kind of opportunity to present his case either formally or informally. The State argues that employment of its administrative remedies "saves the State a great expense." The State also maintains that its procedures encourage prison discipline and harmony by requiring members of the prison community to "resolve their problems together and by themselves." That, the State claims, results in increasing the sensitivity of members of the prison community to the needs and problems of their fellow members.
 
 
 32
 Weighing all the competing interests, however, we conclude that New Jersey's alternate administrative remedies are constitutionally deficient inasmuch as they make no provision for "some meaningful opportunity subsequent to the initial taking for a determination of rights and liability," Parratt, 451 U.S. at 541, 101 S.Ct. at 1916, and because the State retains the absolute discretion to act or not to act once a prisoner resorts to the administrative remedies. By depriving Holman of any opportunity to adequately present his case, either before a court or an administrative body of some kind, the State has created "an unjustifiably high risk that [Holman's] meritorious claims will be terminated." Logan, 455 U.S. at 434-35, 102 S.Ct. at 1157.[13] Our examination of the reasons proffered by the State in support of its procedures do not convince us that they are constitutionally valid alternatives to the cause of action barred by section 59:5-3.
 
 
 33
 Our holding in this regard is limited. We do not adopt a per se rule requiring the provision of a hearing in every administrative procedure the State devises. We also do not imply that the State must provide Holman with a full-fledged judicial type hearing in order to meet the minimum requirements of due process. See Logan, 455 U.S. at 437, 102 S.Ct. at 1158-59. What we do hold is that, in this case, the State is required to provide Holman with some kind of meaningful opportunity to have his claim properly evaluated at some point. That opportunity need not be granted at the initial stages of the claim review process.[14] Further, the opportunity provided need not be formal nor need it be conducted pursuant to the requirements of the Federal Rules of Evidence or the Federal Rules of Civil Procedure. See Goldberg, 397 U.S. at 266-68, 90 S.Ct. at 1019-21; Logan, 455 U.S. at 437, 102 S.Ct. at 1158-59. Indeed, the Supreme Court has determined that the requirements of due process can be satisfied with the provision of informal meetings between a claimant and a person empowered to grant or deny the claim. See Memphis Light, Gas, & Water Div., 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); see Grey Panthers v. Schweiker, 652 F.2d 146 (D.C.Cir.1981). Because, however, the State has provided Holman with no opportunity to be heard in any forum or at any point in the procedures the State has presently devised, cf. supra note 11 (noting that new administrative procedures promulgated by New Jersey are not before us), the State has deprived Holman of property without due process of law.
 
 III
 
 34
 We conclude that the district court correctly determined that section 59:5-3, by depriving Holman of his cause of action under the New Jersey Tort Claims Act, violates the fourteenth amendment of the United States Constitution. Holman, 542 F.Supp. at 926.[15] The order of the district court will be affirmed.[16]
 
 
 
 *
 Honorable Walter K. Stapleton, United States District Judge for the District of Delaware, sitting by designation
 
 
 [1]
 N.J.Stat.Ann. § 59:5-3 (West 1982) provides that:
 59:5-3 Suits by prisoners
 No action shall be commenced by or on behalf of a prisoner against a public entity or public employee until such prisoner shall be released from institutional confinement. For the purposes of the claims notification requirements and the statute of limitations contained in chapter 8 of this act [sections 59:8-1 to 59:8-11], a prisoner's claim shall accrue upon his release from institutional confinement; provided, however, that a prisoner may file a notice of claim in accordance with the procedures set forth in Chapter 8 at any time after an injury and nothing in this act shall bar administrative review and settlement of that claim prior to his release from institutional confinement.
 
 
 [2]
 In making its determination, the Court adopted the analysis of Bonner v. Coughlin, 517 F.2d 1311, 1319 (7th Cir.1975), modified in banc, 545 F.2d 565 (7th Cir.1976), cert. denied, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). Under the Parratt/Bonner test, "the existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment." Parratt, 451 U.S. at 542, 101 S.Ct. at 1916 (quoting Bonner, 517 F.2d at 1319)
 
 
 [3]
 The Court was careful to denote the limitations of its decision. States remain free to erect reasonable procedural requirements such as statutes of limitations, to impose fees in appropriate cases, and to terminate claims for failure to comply with reasonable procedural or evidentiary rules. See Logan, 455 U.S. at 437, 102 S.Ct. at 1158
 
 
 [4]
 United States v. Eight Thousand Eight Hundred and Fifty Dollars in United States Currency, --- U.S. ----, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), is also inapplicable to this case. In that case it was contended that an eighteen month delay between the seizure of money and the commencement of a forfeiture action violated the due process rights of the person from whom the money was seized. The Supreme Court determined that in cases involving delays in the bringing of actions due to pending criminal or administrative investigations, the test of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), must be applied to determine whether the delay violated the due process right to be heard at a meaningful time. Applying that test the Supreme Court found no constitutional violation on the facts of that case
 In Holman's case no comparable constitutional attack has been made. Holman complains that the bar created by § 59:5-3 deprives him of a protected property interest without due process, not that the dilatory conduct of the State in prosecuting a particular action deprived him of the right to a hearing at a meaningful time.
 
 
 [5]
 The State cannot defend § 59:5-3 on the ground that it constitutes a substantive component of a New Jersey prisoner's right to sue the State. See Logan, 455 U.S. at 433, 102 S.Ct. at 1156; Martinez, 444 U.S. at 282, 100 S.Ct. at 557. The statute's "temporary" bar against suits by prisoners pursuant to the New Jersey Tort Claims Act is not "like an element of the tort claim itself, ... merely one aspect of the State's definition of that property interest." Martinez, 444 U.S. at 282 & n. 5, 100 S.Ct. at 557 & n. 5. It does not expand nor does it limit a prisoner's right to recovery under the N.J.T.C.A. Instead, the statute merely imposes a procedural limitation on a prisoner's ability to assert his rights
 
 
 [6]
 Although at oral argument the State conceded that Holman was effectively deprived of his cause of action under the New Jersey Tort Claims Act, the record does not reveal whether Holman, who is serving a life sentence, will be eligible for parole or probation. We therefore treat Holman, for purposes of our analysis, as a prisoner who is serving a lengthy prison sentence
 
 
 [7]
 The Logan Court stated that the factors that should be considered are:
 the importance of the private interest and the length or finality of the deprivation, the likelihood of governmental error, and the magnitude of the governmental interests involved.
 Logan, 455 U.S. at 434, 102 S.Ct. at 1157 (citations omitted).
 
 
 [8]
 We do not here imply that any "bright-line" rule exists regarding the length of time a prisoner's action may be constitutionally deferred. To make such a determination in individual cases, the courts must consider not only the length of sentence, but the degree to which the prisoner's ability to marshal evidence, call witnesses, and otherwise present his case are effectively impaired, thereby increasing the "risk of an erroneous deprivation" of property. Mathews, 424 U.S. at 335, 100 S.Ct. at 903; see Logan, 455 U.S. at 434-35, 102 S.Ct. at 1157-58
 
 
 [9]
 The State has since modified its procedures. See note 11 infra
 
 
 [10]
 The State argues that the district court did not consider the availability of constitutionally valid administrative alternatives when it declared § 59:5-3 unconstitutional. Our review of the complaint and opinion makes plain that the district court considered all alternatives available to Holman at the time it rendered its decision. See Holman, 542 F.Supp. at 925-26. Therefore, it is apparent that no issue with respect to the constitutionality of § 59:5-3 remains before the district court. Consequently, a remand to the district court on this issue is unnecessary
 
 
 [11]
 Since the decision of the district court in this case was filed, the State has moved to modify the administrative remedies available to prisoners as an alternative to suits under the N.J.T.C.A. by enacting Standard 943--Inmate Reimbursement for Lost, Damaged or Destroyed Personal Property
 Under Standard 943, an inmate claiming a loss must file a claim on a form provided by the state. A staff person in the jail is then designated to investigate the claim and prepare a report. The investigator is required to take an oral statement of the claimant. The report is submitted to the Business Manager of the jail who recommends either approval or denial of the claim. If either is recommended, then the claim is submitted to the Superintendent of the jail for his review and recommendation. Upon his approval of the claim all documents are sent to the Assistant Commissioner for his final approval. Only then will a claim be paid. Claims denied by the Superintendent are not processed any further. (Standard 943.2.). Inmates must file their claim within fifteen days of the loss or of discovery thereof. (Standard 943.5).
 Because Standard 943 was not promulgated at the time the district court issued its order, it was not before that court and consequently is not before us in this appeal.
 
 
 [12]
 In Davis v. United States, 415 F.Supp. 1086 (D.Kan.1976), the federal prisoners compensation statute, 18 U.S.C. § 4126 (1976), was held to violate prisoners' due process rights because the claims procedure made no provision for a hearing at any step in the processing of the claim. The court required modification of the administrative procedures to provide for a hearing. The regulations now provide that "any claimant not satisfied with the decision of the Claims Examiner" may be afforded a hearing upon written request and good cause shown. 28 C.F.R. § 301.139(a) (1982). Thus the state's reliance, by analogy, on 18 U.S.C. § 4126 (1976) is misplaced, as the New Jersey administrative procedures provide no comparable provision for a hearing of any kind
 
 
 [13]
 In Memphis Light, Gas & Water Division, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the Court determined that the failure to afford utility customers an opportunity to present their complaint to a designated employee of the company empowered to review disputed bills and rectify error deprived those customers of an interest in property without due process of law. A full formal evidentiary proceeding, however, was not required. As has often been noted, to satisfy minimum due process requirements, an alternative administrative procedure must provide a claimant with an opportunity to be heard at some point, Mathews, 424 U.S. at 319, 100 S.Ct. at 895, and be tailored, in light of the decision to be made, to the "capacities and circumstances of those to be heard," Goldberg, 397 U.S. at 268-69, 90 S.Ct. at 1021, and in a manner "appropriate to the nature of the case," Logan, 455 U.S. at 437, 102 S.Ct. at 1159
 
 
 [14]
 See note 12 supra. Thus, Holman need only be given the right to seek a hearing upon administrative appeal of an adverse decision. Such a hearing petition need only be granted upon an adequate showing of good cause. See 28 C.F.R. § 301.139(a) (1982)
 
 
 [15]
 On appeal Holman urges that section 59:5-3 also deprives him of the equal protection of the law and of "substantive" due process in violation of the First and Fourteenth Amendments. The district court, in a well reasoned opinion, disagreed. We affirm that determination for the reasons set forth in that opinion. Holman, 542 F.Supp. at 918-21
 
 
 [16]
 The parties have not briefed or argued, and we do not decide, the consequences of our conclusion that section 59:5-3 operates to deprive Holman of a property interest without due process. Under Parratt, a section 1983 claim for mere negligence will not lie if adequate post-deprivation proceedings are available. But see Holman, 542 F.Supp. at 920-21 & n. 16. We do not decide whether, under New Jersey law, the invalidation of section 59:5-3 would enable Holman to sue the State pursuant to the N.J.T.C.A., although we note the absence of a severability clause in the Act. If, because of our determination that section 59:5-3 is unconstitutional, a cause of action under the N.J.T.C.A. is now available to Holman, we leave it to the district court to decide whether to treat Holman's claim for damages as a pendent state claim