483 So.2d 489 (1986)
Timmy Ray McCUISTON, Petitioner,
v.
Frank WANICKA, As Sheriff of Lee County, Florida, Respondent.
No. 85-2493.
District Court of Appeal of Florida, Second District.
February 14, 1986.
*490 Robert J. Coleman, Fort Myers, for petitioner.
Stephen E. Hooper, Fort Myers, for respondent.
RYDER, Chief Judge.
Timmy Ray McCuiston petitions this court for a writ of certiorari to review an order of the circuit court abating McCuiston's civil suit against respondent Frank Wanicka, the Sheriff of Lee County. We grant the petition for certiorari and remand this case to the circuit court with directions to permit McCuiston to proceed with his lawsuit.
McCuiston, while a pretrial detainee in the Lee County Jail, allegedly was assaulted by another prisoner. Contending that the attack could have been prevented had jail officials exercised due care, McCuiston sued Sheriff Wanicka for damages. Shortly before trial was to commence, Wanicka successfully moved to abate the action because McCuiston, in the interim, had been convicted of a felony and sentenced to state prison. Thus, Wanicka maintained, McCuiston had been divested of his civil rights by virtue of section 944.292, Florida Statutes (1983). In Watts v. Buck, 454 So.2d 1079 (Fla. 2d DCA 1984), we interpreted this statute as including the right to maintain a civil action.
Statutes such as section 944.292 are commonly known as "civil death" statutes, from the common law notion that a convicted felon is civiliter mortuus. They have been described as "an archaic remnant of an era which viewed inmates as being stripped of their constitutional rights at the prison gate." Thompson v. Bond, 421 F. Supp. 878, 882 (W.D.Mo. 1976). Nonetheless, even in recent years the right to initiate civil suits has been held by other jurisdictions to be among the rights suspended by comparable "civil death" statutes. See, e.g., Hammett v. San Ore Construction Co., 195 Kan. 122, 402 P.2d 820 (1965); Boatwright v. State Industrial Accident Commission, 244 Or. 140, 416 P.2d 328 (1966).
Until the adoption of the present version of section 944.292, the concept of "civil death" for convicted felons apparently was not recognized in Florida jurisprudence. See, e.g., Willingham v. King, 23 Fla. 478, 2 So. 851 (1887). As originally enacted in 1974, our statute provided that, "the only civil rights which shall be suspended by conviction are the right to vote, hold public office, and serve on a jury." § 944.292, Fla. Stat. (1975). The supreme court invalidated that statute upon a finding that its provision for automatic reinstatement of civil rights unconstitutionally infringed upon the Governor's exclusive powers of pardon and clemency as set forth in article IV, section 8(a) of the Florida Constitution. In re Advisory Opinion of the Governor, Civil Rights, 306 So.2d 520 (Fla. 1975). In addition to the portions of the statute deemed objectionable by the supreme court, the 1976 legislature also deleted the specific and limited enumeration of the civil rights forfeited by convicted felons. So far *491 as we know, Watts represents the first time an appellate court in this state was called upon to interpret section 944.292 as amended.
In the instant case, petitioner calls upon this court to revisit section 944.292 in light of a recent decision from another District Court of Appeal declaring the statute unconstitutional. Lloyd v. Farkash, 476 So.2d 305 (Fla. 1st DCA 1985). The question of constitutionality was not addressed in Watts. The appellant in Lloyd, like the petitioner in Watts, was a state prisoner who sued his attorney for malpractice. The trial court dismissed Lloyd's complaint, in part, on the authority of Watts, and Lloyd appealed. The first district did not quarrel with our literal reading of section 944.292, but found that the result "runs afoul of constitutional provisions guaranteeing access to the courts" and held section 944.292 unconstitutional "insofar as it purports to deprive convicted felons of their right to bring civil actions in state courts." Lloyd, 476 So.2d at 308. We agree with the decision in Lloyd and hold that section 944.292, Florida Statutes (1983), violates the constitutions of both the United States and state of Florida.
First, we address the objections predicated upon the federal constitution. Even prisoners enjoy a constitutional right of "access to the courts." Coleman v. Peyton, 362 F.2d 905 (4th Cir.), cert. denied, 385 U.S. 905, 87 S.Ct. 216, 17 L.Ed.2d 135 (1966). Though not among the rights specifically set forth in the Bill of Rights, the right of access to the courts stems from the first amendment right to petition for redress of grievances. Thompson. Such right may be traceable, in fact, to the Magna Carta. Flood v. State ex rel. Homeland Co., 95 Fla. 1003, 117 So. 385 (1928). The Supreme Court has mentioned this right of access without specifically applying it to civil litigation unrelated to the prisoner's incarceration. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). However, numerous other courts have drawn no distinction between prisoners seeking such relief as habeas corpus and those wishing to file civil actions generally. "[T]he constitutional protection of access to the courts ... includes access to all courts, both state and federal, without regard to the type of petition or relief sought." Hooks v. Wainwright, 352 F. Supp. 163, 167 (M.D.Fla. 1972). See also Corpus v. Estelle, 551 F.2d 68, 70 (5th Cir.1977) ("[R]easonable access to the courts must include access in general civil legal matters."); Souza v. Travisono, 368 F. Supp. 959 (D.R.I. 1973).
We must conclude, therefore, that the right of access to the courts cannot be reconciled with such all-encompassing statutory provisions as section 944.292. In Holman v. Hilton, 712 F.2d 854 (3d Cir.1983), the court of appeals considered a New Jersey statute which barred any actions by prisoners against public entities or employees. The court found that the statute, by delaying any action until after the prisoner's release from confinement, unreasonably deprived prisoners of a protected property right, namely, a chose in action. A similar result was reached by the Alaska Supreme Court in Bush v. Reid, 516 P.2d 1215 (Alaska 1973). There, a statute suspending civil rights, including the right to initiate civil actions, was held to violate both the due process and equal protection clauses of the fourteenth amendment. See also Bilello v. A.J. Eckert Co., 42 A.D.2d 243, 346 N.Y.S.2d 2 (1973).
We also hold that section 944.292 violates article 1, section 21, of the Florida Constitution, which guarantees access to the courts to "all persons."[1] A comparable provision has been included in all Florida's Constitutions since 1838. G.B.B. Investments v. Hinterkopf, 343 So.2d 899 (Fla. *492 3d DCA 1977). The courts of this state should scrutinize carefully any actions taken by the legislature which may place impermissible burdens on the exercise of the right of access to the courts. Shay v. First Federal of Miami, Inc., 429 So.2d 64 (Fla. 3d DCA 1983). In the absence of an overpowering public necessity, the legislature is without power to abolish such a right without providing a reasonable alternative. Kluger v. White, 281 So.2d 1 (Fla. 1973). Any restrictions must be liberally construed in favor of the constitutional right. Lehmann v. Cloniger, 294 So.2d 344 (Fla. 1st DCA 1974). G.B.B. Investments. "The law abhors the denial of access to the courts for any other reason than a wilful abuse of the processes of the court." Rashard v. Cappiali, 171 So.2d 581, 583 (Fla. 3d DCA 1965).
In holding section 944.292 unconstitutional, we find no compelling rationale for overriding the right of access. We reject respondent's assertion that the loss of the right to sue is simply an additional punishment validly assessed for felony offenses. Another justification commonly offered for "civil death" statutes cites the high volume of frivolous litigation inevitably generated by prisoners. Even assuming that a statute directed toward curbing this abuse of legal process would represent a legitimate legislative endeavor, the present statute inhibits far more than the mere "nuisance" lawsuit. The Oregon statute upheld in Boatwright was later invalidated in Delorme v. Pierce Freightlines Co., 353 F. Supp. 258 (Ore. 1973) on the grounds it was unconstitutionally overbroad: "The statute cannot reduce frivolous litigation by excluding from court an entire class of litigants because some members of the class may assert improper claims." Id. at 260. The New Jersey statute overturned in Holman likewise attempted no distinction between meritorious and frivolous litigation. Further, such laws "tend to increase prison discord by blocking a significant means of orderly dispute resolution." Holman, 712 F.2d at 860.
The necessity of addressing McCuiston's grievance by issuing a writ of certiorari is obvious. The passage of time inexorably hinders a litigant's ability to gather fresh, competent witnesses in support of his claim. Holman. "To delay the action until plaintiff is released from prison could conceivably forever deny his securing presently available evidence which he alleges is necessary to prove his claim... . And to arbitrarily deny even the bare opportunity to process his claim for an indefinite number of years could well render the legal process meaningless for this plaintiff." Peterson v. Nadler, 452 F.2d 754, 756 (8th Cir.1971).
We grant the petition for writ of certiorari and remand this case to the circuit court for further proceedings consistent with this opinion.
SCHOONOVER and HALL, JJ., concur.
NOTES
[1] Other jurisdictions with constitutional provisions similar to article 1, section 21 also have refused to bar convicted felons from civil litigation. See, e.g., Chesapeake Utilities Corp. v. Hopkins, 340 A.2d 154 (Del. 1975) (Delaware Constitution overcomes the common law doctrine of "civil death"); Davis v. Pullium, 484 P.2d 1306 (Okla. 1971) ("civil death" statute no defense to a personal injury action, due to Oklahoma Constitution holding that state's courts open to "every person").